J. L. RHEA, Appellee, v. ADDER MACHINE COMPANY, Appellant.

PRINCIPAL AND AGENT: Commission on Sales—Exempting Clause. A principal who, reasonably knowing that he would be unable to fill orders, contracts to pay his agent (who was without such knowledge) a commission on all orders obtained, will not be relieved of his obligation by an exempting clause in the contract that no commissions will be claimed "*by reason of delay in filling orders.*"

*Appeal from Des Moines Municipal Court.*—W. G. BONNER, Judge.

JULY 6, 1920.

REHEARING DENIED OCTOBER 23, 1920.

SUIT for commission on sales of adding machines resulted in judgment as prayed. The defendant appeals.— *Affirmed.*

*Read & Read*, for appellant.

*G. H. Winans*, for appellee.

LADD, J.—On April 2, 1917, the parties hereto entered into a contract by the terms of which plaintiff became the exclusive sales agent of the defendant, "to dispose of by lease and sale under the company's regular contracts with customers, Wales Visible Adding and Listing Machines, as now are or may be manufactured by the company," within designated counties. In pursuance thereof, plaintiff obtained an order from the Commercial Savings Bank of Farragut, Iowa, for a Model 30 machine, on June 29, 1917; an order from the Farmers & Merchants State Bank of Corydon, July 25, 1917; and another order from Hammill College, Council Bluffs, three days later. These orders were promptly accepted, and commissions credited to plaintiff, but defendant did not fill them. The first was canceled by the purchaser on March 25, 1918, the second about January 1, 1918, and the third in the fall of 1917. Such cancellations were acquiesced in by defendant, for that it was unable to deliver machines such as were sold. Suit is for recovery of these commissions. The defendant contends that it is relieved of liability by exemptions therefrom, contained in the contract. It is stipulated therein that, upon receipt of an order which is accepted, the full amount allowed as commission was to be entered on the company's books as a credit. Paragraph 45 thereof stipulates that:

"In case the purchaser fails to pay any note or any part

of the purchase price of a machine and your commission on the machine has been paid to you or credited to your account, the commission on the amount unpaid is to be charged back against your account."

Paragraph 46:

"Such credits or commissions as outlined above, when entered in your account on the books of the company, shall constitute full compensation and remuneration for your services and expenses."

A previous paragraph, 23, stipulated that:

"It is mutually agreed that no damages or commissions are to be claimed by reason of delays in filling orders, or should accidents, fire or strikes occur, or other causes beyond our control arise."

The agent also agreed to "abide by all the decisions, rules, and regulations of the company, which are hereby made a part of this contract."

Paragraph 57 of the Decision Book contains the following:

"Where in the interest of business at large it is considered by the company advisable not to enforce collection on account, the company shall accept cancellation of the order and relieve the purchaser of any responsibility he has assumed. In such cases the same commission adjustment shall be made as though the cancellation had been accepted with the consent of the sales manager."

The sole question is whether these stipulations relieved the defendant from liability for commissions. Manifestly, none of these conditions were available, save, possibly, Paragraph 23, relating to damages or commissions "claimed by reason of delays in filling orders." The trouble, however, was deeper than the mere matter of delays. The company was without machines such as it employed plaintiff to obtain orders for, and, moreover, it had not perfected its device for their manufacture. Its inability to furnish the machines appears from its letter of September 18, 1917, addressed to the Hammill College and

Business Institute of Council Bluffs, Iowa, in which it says:

"Referring to your kind order placed with us for one of our Model 30 Duplex Subtracting Machines, we beg to inform you that shipment was being prepared when our development department suggested a few minor changes in the mechanical construction of this machine. Upon investigation of these changes, it was found that, although being simple in nature, would be very valuable to the service and life of the machine. To install these slight changes, it was found necessary to make new tools, which, as you may be aware, cannot be accomplished in a few hours. This company deemed it advisable, in the interests of both customer and itself, to make these changes effective without delay, feeling that the customer would by far suffer the inconvenience of waiting a little while longer for the delivery of a machine without these improvements."

It also promised delivery "as quickly as the changes are made." We understand that like letters were mailed to other parties purchasing machines. This was sent out, notwithstanding the fact that, as early as April 16, 1917, a letter addressed "to men on the firing line" urged the agents to do their best in obtaining orders for Model 30 machines. As early as September 1, 1917, in a letter to plaintiff, the defendant advised that "we have no means of knowing just when Model 30 machines will be delivered to those sales orders now pending delivery," and requested that no further orders be taken, and proceeded:

"The development department have made a wonderful improvement in the construction of Class 30 machines and these improvements will be installed in all Class 30 machines now pending delivery."

It is plain from these letters that the company had not perfected the Model 30 machine, and there is no evidence in the record tending to show that the machine was ever completed, or ever ready for delivery. In entering into the contract, plaintiff had the right to assume that the company then had or could manufacture within a

reasonable time what it employed him to sell. Nothing to be found in that instrument required him to risk its ability to furnish sometime the goods he was employed to sell. The defendant's lapse, as between principal and agent, was not merely in delay, but in its inability to furnish for purchasers the machines which it had employed plaintiff to sell, and which he did sell. Exemption from the company's liability for this breach is not covered by any of the clauses quoted; and we are of opinion that the court did not err in so ruling, nor in finding that the contract became impossible of performance by defendant, owing to its failure to perfect the machines for the purchase of which the orders were procured. The company must have been aware that it was not in a situation to furnish Model 30 when the contract was made, though it intended to manufacture machines of that model, and may do so yet. Having undertaken something that might be difficult of performance, it is not in a situation to complain. *Wernli v. Collins,* 87 Iowa 548. Moreover, such a contingency might reasonably have been anticipated, and have been provided against, and the absence of any such provision warrants the inference that the obligation of defendant was intended to be absolute. *Mahaska County St. Bank v. Brown,* 159 Iowa 577. The plaintiff was not shown to have had knowledge of these facts, and, for all that appears, entered into the agreement in reliance on defendant's ability to perform. In these circumstances, the company was not relieved from liability for damages consequent on its subsequent inability to carry out its undertaking. See 13 Corpus Juris 635 *et seq.—Affirmed.*

WEAVER, C. J., GAYNOR and STEVENS, JJ., concur.