CONSTANCE SALINGER, Appellee, v. GENERAL EXCHANGE INSURANCE CORPORATION, Appellant, et al., Appellee.

No. 41344.

June 24, 1932.

Hughes, O'Brien & Faville, for appellant.

Hughes, O'Brien & Faville, for General Motors Acceptance Corporation, defendant-appellee.

Howard L. Bump, for appellee.

GRIMM, J.—The petition in this case was filed in October, 1930. The plaintiff is the wife of B. I. Salinger, Jr. For brevity, he will be referred to as "Salinger" and his wife will be referred to as the "plaintiff." The defendant General Motors Acceptance Corporation will be referred to as the "acceptance corporation" and the defendant General Exchange Insurance Corporation will be referred to as the "insurance company."

Generally speaking, it is alleged in the petition that the plaintiff is the owner of a certain LaSalle sedan automobile, purchased from the Cadillac Motor Car Company of Chicago on the deferred payment plan, a copy of the contract being attached to the petition. The contract is a conditional sales contract and specifies the purchase price of the automobile at $3,041.75. There was a deferred balance of $2,089.00 to be paid in monthly installments of $175.00. The contract then provides, among other things:

"1. Title to said property shall not pass to the purchaser until said amount is fully paid in cash. * * *

"6. Time is of the essence of this contract, and if the purchaser default in complying with the terms hereof, or the seller deems the property in danger of misuse or confiscation, the seller

or any sheriff or other officer of the law may take immediate possession of said property without demand (possession after default being unlawful), including any equipment or accessories thereto; and for this purpose the seller may enter upon the premises where said property may be and remove same. The seller may resell said property, so retaken, at public or private sale, without demand for performance, with or without notice to the purchaser (if given, notice by mail to address below being sufficient), with or without having such property at the place of sale, and upon such terms and in such manner as the seller may determine; the seller may bid at any public sale. From the proceeds of any such sale, the seller shall deduct all expenses for retaking, repairing and selling such property, including a reasonable attorney's fee. The balance thereof shall be applied to the amount due; any surplus shall be paid over to the purchaser; in case of deficiency the purchaser shall pay the same with interest and the purchaser does hereby confess judgment in the amount of such deficiency. Seller may take possession of any other property in the above described motor vehicle at the time of repossession and hold the same temporarily for the purchaser without liability on the part of the seller.''

It is alleged in the petition that at the time of bringing the suit the plaintiff had invested in the car $1,652.00. It is further alleged that the interest of the Cadillac Motor Car Company had been assigned to the acceptance corporation; that on August 2, 1929, the defendant insurance company entered into a contract of insurance with the plaintiff against loss by theft, which insurance company policy is attached to the plaintiff's petition, marked ''Exhibit B.'' This contract of insurance insured against fire and lightning, theft, robbery and pilferage. It is further alleged that on or about January 10, 1930, said automobile was stolen in the city of Chicago and that the value of the machine at the time of the loss was $2,286.00. It is further alleged, upon information and belief, that all of the stock of the insurance company which issued the policy was owned and controlled by the acceptance corporation.

On January 3, 1931, the acceptance corporation answered, admitting the execution of the conditional sales contract and admitting that at the time of the theft of the automobile, it was the owner and holder of said conditional sales contract. In a

separate count, it answers that after the theft of the automobile, the automobile was recovered on the 15th day of March, 1930, and thereafter, by an agreement on the part of the plaintiff, the car was taken to the Schroeder Auto Top and Glass Company of Chicago for repairs; that the car was there repaired and placed in as good as or better mechanical condition than it was in at the time said car was stolen; that the plaintiff agreed with the insurance company that if said insurance company would pay to the said Schroeder Auto Top and Glass Company the sum of $193.60, being the amount of the cost of repairing said automobile, the plaintiff would release the said insurance company in full; that said bill was paid and that the plaintiff did enter into and sign a waiver and agreement of settlement, releasing the said insurance company from any and all claims of every kind and character against it upon said policy of theft insurance.

It is also alleged in said answer that after the payment of said repair bill, the acceptance corporation did repossess the said automobile and sold it for an amount of $84.00 less than the then outstanding balance due and owing to the acceptance corporation, under the terms of the conditional sales contract. It is also alleged that at the time said automobile was repossessed, the plaintiff was in arrears on four payments or installments, due under said conditional sales contract under which said car was purchased, said payments being in the amount of $175.00 each, payable one each month.

On January 3, 1931, the insurance company filed its answer by way of a general denial, and specifically pleaded the recovery of the car after it had been stolen, and the agreement that the car should be taken for repairs, as previously stated; that the plaintiff agreed that if the insurance company would pay the repair bill of $193.60, the plaintiff would and did release the insurance company of all claims of whatsoever kind or character against it, and that thereafter said plaintiff did enter into a written release, releasing the insurance company in full for any loss or claim against it, and directed the insurance company to pay the repair company the repair bill; that, therefore, the insurance company is not liable to the plaintiff in any sum whatsoever.

On February 2, 1931, the plaintiff filed a reply to the answer

of the insurance company, containing among other things a denial that the plaintiff signed the release and waiver set up by the insurance company, but admitting that an instrument was signed, the purposes of which were to authorize the insurance company to have the repair made to the car. It is claimed that the car was never returned to the plaintiff for inspection. In another count, the plaintiff replies to the answers filed by both defendant corporations, in substance, that the entire capital stock of the insurance company is owned by the General Motors Acceptance Corporation and that said insurance company is controlled by the acceptance corporation. It is charged that the instrument claimed by the insurance company to be a release was obtained by fraud.

On March 30, 1931, plaintiff filed an amendment to its reply, alleging that the acceptance corporation organized under the laws of the state of Delaware has control of the insurance company, save and except qualifying shares held by directors; that the said acceptance corporation dominates and controls its subsidiaries, including the insurance company. It is also alleged that the acceptance corporation, by taking possession of the automobile, has *converted* the same, the reasonable value of said automobile being $2,286.00.

For the purposes of this case, only a very brief outline of the facts need be set out. The conditional sales contract with the Cadillac Motor Car Company was dated August 17, 1929. The purchase price was $3,041.75, of which $952.75 was paid down, partly in cash and partly an allowance for an old car, leaving a deferred balance due under the contract of $2,089.00. This was to have been paid in installments of $175.00 each, payable on the 20th of each succeeding month, the last installment being for $164.00.

After the execution of this conditional sales contract, it was sold and assigned by the Cadillac Motor Car Company to the acceptance corporation, the assignment being in writing and appearing on the back of the conditional sales contract. At the time of the sale of the car, the insurance policy in question was issued by the insurance company. It provides, among other things, to insure the dealer, Cadillac Motor Car Company; the purchaser, the plaintiff; and the acceptance corporation, as their interests might appear, from loss by theft, pilferage or fire.

Salinger was also named as one of the assured, he having signed the conditional sales contract. The entire transaction, so far as the plaintiff is concerned, was handled by Salinger. In fact, for most of the time involved, the plaintiff was in California. Following the making of the contract and the delivery of the car, Salinger, acting for the plaintiff, trailed in the payments of the installments, none of which were paid when due. The last payment made on the car was the one due November 20, 1929, which installment was paid December 19, 1929. The payments due December 20, 1929, and January 20, 1930, were never paid, nor were any payments subsequently due ever made. On January 10, 1930, the car was stolen. At that time, the plaintiff was in default on the contract. The insurance company undertook to locate the car, and succeeded March 15, 1930. It was found in a garage in Chicago. A Mr. Haase, as an adjuster for the insurance company, inspected and took possession of the car. The insurance company elected to repair and recondition the car, to which Salinger agreed. There is a slight dispute between the parties as to just what was said in connection with said agreement, but Salinger himself, on rebuttal, testified in reference to his conversation with Haase, when Haase offered to recondition the car, saying:

"I said to him more than that I had no right to ask if they would put it in the shape and satisfy me it was in such shape, that was all I wanted."

The car was repaired and placed in first-class condition, all accessories which had been stolen or damaged were replaced, and the repair bill was paid. These repairs were completed on April 4, 1930, and on April 5, 1930, while the car was still in the repair shop, and before the same had been delivered to the insurance company, the car was taken by the acceptance corporation, under its conditional sales contract. The plaintiff at that time was in default more than $700.00 on the conditional sales contract, and some of the payments were more than three months in default, notwithstanding the record shows repeated oral and written notices had been sent in an effort to obtain the payment of the installments due. The acceptance corporation sold the car under the terms of the conditional sales contract and re-

ceived $1,522.00 therefor, leaving a balance still due the acceptance corporation under the terms of the sale of $42.00.

It will be noted that in this suit, while the acceptance corporation was made a party defendant, no relief was asked against it, and as to it the cause was subsequently dismissed. The jury returned a verdict against the insurance company for $1,600.00.

Twenty-one errors are relied upon for reversal. We shall not find it necessary to consider all of them.

I. By instruction No. 6, the court undertook to direct the jury in reference to the measure of damages in the event the plaintiff should recover. The policy of insurance provided that in case of loss, the company should be liable in "an amount not exceeding the *actual* cash value of the property insured at the time of the loss or damage." Notwithstanding this language of the contract, the court instructed the jury that in arriving at the damages, they should consider the following elements:

"1. The *reasonable* cash value of the car at the time it was stolen.

"2. Evidence as to the purchase price of the car.

"3. The use the car had had.

"4. Its value to the plaintiff as a means of conveyance.

"5. Its depreciation in value.

"6. All other facts and circumstances bearing upon the value of the plaintiff's interest in the car."

Manifestly, the court's instructions in this regard were erroneous under the definite terms of liability specified in the insurance contract.

Without unduly extending this opinion, we may say, by way of illustration, that the value of the car to the plaintiff as a means of conveyance was wholly an immaterial inquiry in this particular case. The definite policy provision which was the written contract between the parties not only provided that the measure of damages should be "an amount not exceeding the actual cash value of the property insured at the time of loss or damage," but also provided that the recovery should be "without compensation for loss of use."

The court was clearly bound by the provisions of the insurance policy sued upon, and it was therefore erroneous to tell

the jury they could consider as an element of damage the value of the car to the plaintiff as a means of conveyance.

"All other facts and circumstances bearing upon the value of the plaintiff's interest in the car" is such a broad, vague, and indefinite term as to be both misleading and confusing. No one can tell what elements might be considered by the jury under these broad, vague terms. This statement of an element of damages permits the jury to let their imaginations run upon fanciful elements of damage upon which the appellant would be required to pay by virtue of a general verdict. The only proper thing for the jury to do was to fix the actual *cash* value of the car.

Many other errors are relied upon for reversal, but we deem it unnecessary to discuss them in this opinion.

Presumably, the mistakes of the past will not be committed in a new trial.

It follows that the case must be, and is, reversed.—Reversed.

WAGNER, C. J., and ALBERT, KINDIG, DE GRAFF, and STEVENS, JJ., concur.

EVANS, J., dissents.

FAVILLE, J., took no part in this case.

------

EVANS, J., (dissenting.)—I am constrained to dissent from the foregoing opinion. For the purpose of the dissent, a somewhat fuller statement of the case must be made. To avoid repetition, it will be more convenient for me to refer to the husband as plaintiff, rather than as an agent of the plaintiff. Passing for the moment earlier events, the plaintiff was the owner of a LaSalle automobile, which was insured against loss by theft or fire by the defendant insurance company. On January 10, 1930, the automobile was stolen and notification was given. On March 15 following, the stolen automobile was recovered by the insurance company. It was found in bad condition, but was nevertheless supposed by the insurer to be capable of repair and restoration to its former condition. The adjuster of the insurance company proposed to repair and return. The plaintiff agreed to such course, provided the restored condition was sat-

isfactory when restored to him. Later, a "Loss and Damage Agreement" was signed by the plaintiff. By reason of other events, the insurance company never did conform to the purported agreement made with the plaintiff and never did return the car to the plaintiff. The plaintiff, therefore, has sued upon the policy for the value of his interest in the car. The reason why the insurance company did not return or deliver the car to the plaintiff furnishes the complexities of the case.

The plaintiff bought this automobile on August 19, 1929, from the Cadillac Motor Car Company in Chicago. He bargained for the car at a price slightly in excess of $3,000.00, which amount was to include certain financing expenses and the cost of theft-and-fire insurance for the period of one year. A down payment was made by the plaintiff of $952.75. For the unpaid balance, eleven notes for $175.00 each and one note for $164.00 were executed, the first of them payable on September 20, 1929, and the others successively payable on the 20th day of each successive month. The notes thus executed to the dealer were immediately transferred by the dealer to the General Motors Acceptance Corporation. The function of the latter company was to finance the transaction. An insurance policy was issued by the defendant insurance company for a maximum of $2,286.00. The policy purported to insure the dealer, the acceptance corporation, and the plaintiff, as the interest of each might appear. The premium was charged to plaintiff. The first three installments due respectively September 20, October 20 and November 20 were paid by the plaintiff. On January 10, when the car was stolen, the plaintiff was in default upon the payment due December 20. He made no payment thereafter during the period of the car's disappearance. The deferred payments were secured by a conditional sales contract, which entitled the acceptance corporation to seize and sell the car at any time upon default. The measure of the interest of the acceptance corporation in the insurance was the amount of the deferred payments. During the period of disappearance of the car, the acceptance corporation notified the plaintiff that the loss of the car would not excuse him from prompt payment of the installments as they fell due, and demanded payment accordingly. For some reason, the defendant insurance company notified the plaintiff to the same effect and *advised* payment. On March 17, the insurance ad-

juster, Haase, had a conversation with the plaintiff, looking to a repair of the car and a return to the plaintiff in as good condition as before. This the plaintiff agreed to provisionally. In brief, he reserved the right to inspect the car after its return to him and that he find it satisfactory. In the latter part of March, Haase brought to the plaintiff a blank form of a so-called "Loss and Damage Agreement" and requested him to sign the same. The wife was at that time in California, and it became necessary for the husband to send the paper to her for signature. In due time, the plaintiff returned the paper to Haase by mail, duly signed by husband and wife. This was on April 5. It also appears that some time after the recovery of the car, Haase caused it to be taken to the repair shop of the Schroeder Auto Top and Glass Company for the purpose of repair. The repair bill amounted to $193.00, which was paid at some time by the insurance company. The excuse claimed by the insurance company for failure to return the car to the plaintiff was that the acceptance corporation took possession of the car under its conditional sales contract and sold the same in satisfaction of its debt, the sale being made to the Cadillac Motor Car Company, the dealer from which it was bought. The insurance company justifies such surrender on its part on the ground of the alleged superior right of the acceptance corporation to the possession of the same. The defendant predicates, upon the agreement between the plaintiff and Haase, a plea of accord and satisfaction. The question arises, what effect Haase's surrender of the possession and his failure to return the car had upon the defense of accord and satisfaction. He was not bound to surrender the possession upon mere request and without legal process. In that sense, his failure to perform the agreement relied upon, of accord and satisfaction, was voluntary. The surrender to the acceptance corporation was made on April 5, the very date on which the alleged written agreement was received from the plaintiff. The car was promptly sold to the Cadillac Motor Car Company at private sale. All this was done without notice to, or knowledge of, the plaintiff. The plaintiff pleaded that the seizure by the acceptance corporation and the surrender by the insurance company and the purchase by the Cadillac Motor Car Company were all done collusively and fraudulently as to him and to his injury. He pleaded that as to him in this transac-

tion, the purported three corporations were not separate entities, but were one and the same entity, representing one and the same ownership and interest. It is conceded by defendant, subject to objections, that the three Chicago Corporations are mere subsidiaries of the General Motors Corporation of New York; that the General Motors Corporation owns all the stock of the Cadillac Motor Car Company; that it likewise caused the organization of the General Motors Acceptance Corporation; that it owns all its stock and furnishes all its capital; that the General Motors Acceptance Corporation organized the General Exchange Insurance Corporation and that it owns all its stock; that all these corporations, including the parent corporation, have interlocking directorates; and that the managing officers of one are directors of the other. The purpose of the organization of the General Exchange Insurance Corporation was to insure cars, the purchase of which is financed by the acceptance corporation. These corporations have their separate functions, and are created as a part of the plan of organization of a big business. Such subsidiary organizations are legitimate within the scope of their proper functions. Nevertheless, when two or more of them deal with a third party who is ignorant of their community of interest, they may induce a reliance by such third party which would amount to a fraud upon him. In this case, we may assume that the acceptance corporation under its conditional bill of sale had very arbitrary rights; that it had the right to seize and to sell even at private sale. Perhaps it had a right to sell without notice. But in any event, it was bound to use its arbitrary power in good faith, if at all, and with reasonable diligence to the end that the reasonable value of the property might be realized in the sale. It became for the time being a trustee. It could not become a buyer at its own private sale. In this case, the acceptance corporation took the property without the knowledge of the debtor and sold it, so to speak, to a member of its own family—the Cadillac Motor Car Company. It was sold for $1542.00. The witness of the plaintiff testified that it was worth $2500.00 at the time it was stolen. The witness of the defendant testified that it was worth $1,675.00 at the time of its sale. It was actually resold by the Cadillac Motor Car Company for $1875.00. These are some of the facts which figure in the record. They may have no other legal bearing than on the ques-

tion whether they furnish an excuse to the insurance company for having failed to perform the alleged agreement of accord and satisfaction. If they do not, then the defendant has failed to prove performance by itself of the alleged agreement upon which it relies as a defense.

In the light of the foregoing preliminary statement, I proceed to a consideration of the assignment of error upon which reversal is based.

The assigned error is that the court erred in stating the measure of damages and that the verdict rendered of $1600.00 was excessive. Appellant's brief presents a computation to the effect that the maximum amount that could, in any event, be found for the plaintiff was $722.00. This computation was based upon the theory that in the distribution of the insurance fund, the acceptance corporation would be entitled to take the full amount of its debt, $1564.00, leaving a balance to the plaintiff of $722.00. On the other hand, the evidence shows conclusively that, if the plaintiff was entitled to recover at all, he was entitled to recover exactly $722.00, plus interest. I concede that the court did err in stating the measure of damages. The error, however, was curable by a *remittitur*. The jury found that the plaintiff was entitled to recover. Upon the record there could be no legitimate dispute as to the amount of the recovery. The court could have properly instructed the jury that the amount of recovery, if any, must be the sum of $722.00, with interest thereon. In such a case, our uniform practice is to give the appellee the opportunity to cure the error by *remittitur*. Such is the course that ought to be followed here. The case should be affirmed in the first instance, on condition that the plaintiff remit. If he remit, he should have his judgment affirmed to the extent of $722.00 and interest.

In my judgment, there is no other sustainable assignment of error in the record.