CONSTANCE SALINGER, Appellee, v. GENERAL EXCHANGE INSURANCE CORPORATION, Appellant.

No. 41954.

SEPTEMBER 19, 1933.

REHEARING DENIED JANUARY 19, 1934.

Hughes, O'Brien & Faville, for appellant.

Howard L. Bump, for appellee.

KINTZINGER, J.—This action was before this court on a former appeal in 214 Iowa 1021, 243 N. W. 183. The judgment on that appeal was reversed on an erroneous instruction on the measure of plaintiff's recovery. The "excuse defense" raised in this case was not discussed or ruled on in the former case, except as referred to in a dissenting opinion by Justice Evans.

On August 17, 1929, the appellee purchased, on a conditional sales contract, a La Salle car from the Cadillac Motor Car Company at Chicago for $3,041.75. He made a down payment of $952.75, leaving a balance of $2,089. Appellee agreed in the sales contract to pay this balance in successive monthly installments of $175 each, payable on the 20th of each succeeding month, the last installment being $164. Immediately after the purchase, the conditional sales contract was sold and assigned by the Cadillac Motor Car Company to the General Motors Acceptance Corporation, which is hereinafter referred to as the refinance corporation. The contract provided that if the purchaser default in any payments, the seller or assigns may take immediate possession of the property without demand or notice, with authority to enter upon the premises wherever the property might be located and remove the same. The holder of the contract was authorized to sell the property at public or private sale without demand for performance, with or without notice to the purchaser, and apply the proceeds in satisfaction of the amount due on the contract.

On the day the automobile was purchased, appellee also purchased a fire and theft insurance policy from the appellant, insuring the dealer, the plaintiff, and the refinance corporation, as their interests might appear, in a maximum sum of $2,286, but not exceeding the value of the car.

Appellee used the car and had driven it about 5,000 miles when on January 10, 1930, it was stolen. She immediately notified the insurance company of the theft, and duly filed a proof of loss.

Appellee had paid the monthly installments until December, 1929. The December, January, February, and March installments were in default, although repeated requests for payment were made by the refinance corporation then holding the contract. The stolen automobile was recovered by the insurance company on the 15th day of March, 1930, in a somewhat damaged condition. After its recovery the insurance company, through its agent and through the appellee's husband, acting as her agent, made a provisional adjust-

ment of the loss, by an agreement on the part of the insurance company to recondition and repair the car at its expense, for which it agreed to pay $193.

The adjustment to release the defendant insurance company from all further claims was agreed to by appellee, on condition that the car be repaired and placed in a good condition satisfactory to the Broadway Cadillac people and returned to plaintiff. The release agreement was delivered to the defendant company on April 5, 1930, and on the same day, on information received from the insurance company as to its whereabouts, the car was repossessed and retaken by the refinance corporation. The repair bill amounting to $193 was paid for by the insurance company. This release agreement is pleaded as an accord and satisfaction.

The car was immediately sold by the refinance company to the Cadillac Motor Car Company for $1,542, being a few dollars less than the balance due on the car. There is evidence showing it was worth $2,500 when it was stolen. The balance due under the contract was $1,564. The defendant's witness testified it was worth $1,675 when sold. Shortly afterwards the car was actually resold by the Cadillac Motor Car Company for $1,875.

As a defense against liability on the policy, it is claimed that the title of the automobile in question was in the refinance corporation under the conditional sales contract assigned to it. That appellee defaulted on several installments and the refinance corporation repossessed the car and sold it for a little less than the amount due from appellee. The auto was taken from the insurance company before the work had been entirely finished, and without returning it to appellee, thus making it impossible for the insurance company to perform its agreement to recondition and return it to appellee. Appellant therefore defends on the ground that it was excused from returning the car, because of the repossession thereof by the refinance corporation, all of which appellant claims resulted from plaintiff's failure to pay the installments when due.

The automobile was voluntarily surrendered to the refinance corporation on the same day plaintiff's release agreement was delivered to the defendant, without any legal proceedings. It was not bound to do so, and its surrender was voluntary on its part.

I. The release agreement, pleaded as an accord and satisfaction, was executed on condition that the repairs be satisfactory to the Broadway Cadillac Agency and returned to appellee. It is con-

ceded that this part of the agreement was never performed, and that before the repairs were entirely made, before the car was returned to the plaintiff and without securing the Broadway Cadillac Agency's O. K. on the repairs, the car was repossessed and taken by the refinance corporation under its conditional sales contract. The release agreement was never fully performed because the condition precedent upon which it was executed by plaintiff had not been carried out.

It is the settled law that where a contract is entered into on certain conditions which are not performed, the contract will not be enforced. Therefore in this case the release agreement cannot be enforced, unless justified by the fact that it was impossible for appellant to perform the contract on account of the lawful retaking of said car by the refinance corporation.

It must be conceded that the retaking and repossessing of the car by the refinance corporation was rightful under the terms of its conditional sales contract. Several installments were due and unpaid. It was authorized to retake possession of the car and sell it to satisfy its claim for the balance due. It had a right to sell the car at public or private sale without notice to the appellee. 55 C. J. 1287, section 1313; 24 R. C. L. 479, section 773; Flaherty v. Ginsberg, 135 Iowa 744, 110 N. W. 1050, 13 L. R. A. (N. S.) 1132; Biggs v. Seufferlein, 164 Iowa 241, 145 N. W. 507, L. R. A. 1915F 673; Mohler v. Guest Piano Co., 186 Iowa 161, 172 N. W. 302; Universal Credit Co. v. Mamminga, 214 Iowa 1135, 243 N. W. 513.

II. Notwithstanding all these arbitrary rights of the refinance corporation, was the insurance company thereby relieved of its liability to perform the conditions of the release agreement entered into by it? It is contended by appellant that because the automobile was retaken by the refinance corporation under its conditional sales contract, such taking made it impossible for appellant to perform the conditions of its release agreement with appellee.

It is the rule of law that where it becomes impossible for one party to a contract to perform it through the acts of the other party, such nonperforming party may be excused from complying with the contract. Attix v. Pelan, 5 Iowa 336; Larned v. City of Dubuque, 86 Iowa 166, 53 N. W. 105; Mahaska County State Bank v. Brown, 159 Iowa 577, 141 N. W. 459; Householder v. Nispel, 111 Neb. 156, 195 N. W. 932.

The car was in the possession of the insurance company at the time the contract was entered into, and at that time it knew of the contingency under which the car might be retaken and repossessed by the refinance corporation.

It is also the law that where performance becomes impossible subsequent to the contract, the general rule is that the promisor is not therefore discharged, where he knew of the contingency probably rendering performance impossible. 13 C. J. 639, section 712; Rhea v. Adder Machine Co., 189 Iowa 1085, 178 N. W. 359; Wernli v. Collins, 87 Iowa 548, 54 N. W. 365; Mahaska County State Bank v. Brown, 159 Iowa 577, 141 N. W. 459; District Township of Union v. Smith, 39 Iowa 9, 18 Am. Rep. 39; Central Trust Co. v. Wabash, St. L. & P. R. Co. (C. C.), 31 F. 440; Whittemore v. Sills, 76 Mo. App. 248; Malcomson v. Wappoo Mills (C. C.), 88 F. 680.

The doctrine of impossibility of performance is recognized in the case of Mahaska County State Bank v. Brown, 159 Iowa 577, on page 585, 141 N. W. 459, 462. In that case we said:

"It is enough to say that the undertaking of the bank to furnish the assignee money to continue the business was rendered impossible of performance by the proceedings in bankruptcy and the taking over of the property by the trustee. The parties contracted on the basis that the assets of the estate would continue in the hands of the assignee, and necessarily there was to be implied therefrom the condition that if these were entirely removed therefrom without fault of either party, as by the institution of bankruptcy proceedings, performance would be excused. This was not a condition against which, in the exercise of ordinary prudence, the parties could be expected to have provided. *Ordinarily a contingency which reasonably may have been anticipated must be provided for by the terms of the contract, else the impossibility of performance resulting therefrom will not excuse either party from carrying out the contract.*" (Italics ours.)

In Rhea v. Adder Machine Company, 189 Iowa 1085, on page 1089, 178 N. W. 359, we said:

"The company must have been aware that it was not in a situation to furnish model 30 when the contract was made, though it intended to manufacture machines of that model, and may do so yet. Having undertaken something that might be difficult of performance, it is not in a situation to complain. Wernli v. Collins, 87

Iowa 548, 54 N. W. 365. Moreover, such a contingency might reasonably have been anticipated, and have been provided against, and the absence of any such provision warrants the inference that the obligation of the defendant was intended to be absolute."

In the case of District Township of Union v. Smith, 39 Iowa 9, 18 Am. Rep. 39, we said:

"When one binds himself by his solemn agreement to do an act, he is held liable for its non-performance, though it is rendered impossible by events over which he had no control. If performance is rendered impossible by the destruction of the subject matter of the contract, or by the death of the person upon whose life performance depends, and the like, the obligor will be discharged. But the law holds that events, against which the parties could have provided in their contract, shall never be alleged as an excuse for the non-performance of obligations into which they have entered. Bacon et al. v. Cobb et al., 45 Ill. 47; School Trustees v. Bennet, 3 Dutcher [27 N. J. Law] 513 [72 Am. Dec. 373]; Tompkins v. Dudley, 25 N. Y. 272 [82 Am. Dec. 349]; Harmony et al. v. Bingham, 2 Kearnan. [12 N. Y.] 99 [62 Am. Dec. 142]; Adams v. Nichols, 19 Pick. [Mass.] 275 [31 Am. Dec. 137]; School Dist. No. 1 v. Dauchey, 25 Conn. 530 [68 Am. Dec. 371]; Brumby v. Smith, 3 Ala. 123; Reid v. Edwards, 7 Port. [Ala.] 508 [31 Am. Dec. 720]; Davis v. Smith, 15 Mo. 467; Williams v. Vanderbilt, 28 N. Y. 217 [84 Am. Dec. 333]; Stone v. Dennis, 3 Port. [Ala.] 231; Mill Dam Foundry v. Hovey, 21 Pick. [Mass.] 417; Fowler et al. v. Bott et al., 6 Mass. 63."

In the case of Central Trust Co. v. Wabash, St. L. & P. R. Co. (C. C.), 31 F. 440, 441, it is said:

"The general rule is that, where an obligation or a duty is imposed upon a person by *law*, he will be absolved from liability for non-performance of the obligation, if such non-performance was occasioned by an act of God. This rule is illustrated in the case of common carriers. The rule, however, is just as clear that, when a man *undertakes by an express contract to do a given act*, he is not absolved from liability for non-performance, even though he is prevented from doing the same by an act of God. In that class of cases, if a person desires to absolve himself from liability for non-performance under any circumstances, *he should so stipulate in his contract*." (Italics ours.)

There is a distinction between obligations created by contract and those imposed by law.

"The origin of the modern doctrine, reiterated in a multitude of cases, that impossibility of performance of a contract is not a defense to an action for non-performance, was not apparently in the case of Paradine v. Jane, Aleyn (Eng.) 26. * * * The action was for rent, to which the lessee pleaded that a foreign prince with a hostile army had invaded the realm, expelled him from the land, and prevented him from taking the profits during the time for which the rent was claimed. The plea was held insufficient. The court, as one of the reasons for its decision, laid down the rule that 'where the *law* creates a duty or charge, and the party is disabled to perform it without any default in him, and he hath no remedy over, there the law will excuse him. * * * But when the party *by his own contract* creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract'." L. R. A. 1916F, 15, and numerous cases recognizing this doctrine cited in L. R. A. 1916F, 16, and L. R. A. 1915B, 297.

In the case of Whittemore v. Sills, 76 Mo. App. 248, it is said:

"A common carrier, when acting as such, is a bailee, who is compelled to receive the goods of those offering them for transportation. It is a duty imposed upon him by law, and as such his performance is excused by the *act of God, or the process of the courts.* His service is compulsory, and it would be altogether unreasonable to hold him as if he were an ordinary individual making a voluntary, specific contract. If, however, such carrier *should contract unconditionally, in advance of the bailment,* to transport property at a future time, the special rule governing carriers will not apply to him, and the act of God will not excuse him from performance." (Italics ours.)

In the instant case, the contingency of the refinance corporation repossessing the car was obviously known to the defendant insurance corporation. The insurance corporation knew all about the conditional sales contract held by the refinance corporation; and it knew that the plaintiff was in default; it knew that the refinance corporation was the owner of the conditional sales contract; it knew that the refinance corporation was named as one of the beneficiaries

in the insurance policy; its own policy insured the refinance corporation in such an amount as its interest might appear. The very purpose of its organization was to insure Cadillac Motor Company cars, the purchase of which are financed by the refinance corporation. With a very few exceptions all of its insurance business was upon Cadillac Motor Company cars, refinanced by the refinance corporation. The insurance company well knew of the security and protection the refinance corporation had under the conditional sales contract. It knew that if the installments were not paid as they became due the refinance corporation would inevitably repossess the car under its contract. This contingency was well known to the appellant. The happening of this contingency, which the appellant knew would occur if the defaulted installments were not paid, should have been provided against in the release agreement, in order to make the excuse of "impossibility of performance" available as a defense.

Notwithstanding all of this knowledge on its part, it entered into the release agreement signed by the plaintiff on the express condition that the car be returned to appellee for her inspection and satisfaction.

Appellant agreed, in consideration of its release, to recondition the car to the satisfaction of appellee and return it to her. This condition was not only not performed, but its breach was apparently intentional by appellant. It voluntarily surrendered the car without a protest on the very day the alleged accord and satisfaction agreement was entered into. It was not required to do this without legal proceedings. Common fairness at least required it to make some effort to perform its contract with appellee. Its relations with the refinance corporation were such that it could no doubt have induced the refinance corporation to wait until after the conditions of the release agreement were fully performed and the car returned to appellee. It made no effort whatever to perform its contract, but did absolutely nothing, except to tell the refinance corporation where the car was. It did not raise the slightest objection or make the slightest protest.

When the defendant entered into this agreement it did so with the full knowledge that the car might be retaken under the repossession clause of the contract held by the refinance corporation.

In most of the cases cited by defendant it was held that the defendant had no knowledge or means of knowledge of the existence

568

of any contingency which might make performance impossible. In this case the appellant knew of the contingency. It is therefore our conclusion that the appellant was bound by its contract, and the excuse claimed as an accord and satisfaction is not available herein.

The car was insured for $2,286. The lower court instructed the jury that the reasonable value of the plaintiff's interest in the car did not exceed $722, and that they could not return a verdict in excess of that amount. This instruction was not complained of.

There being no other errors relied on for reversal, the judgment is affirmed.

ALBERT, C. J., and ANDERSON, MITCHELL, and KINDIG, JJ., concur.

STEVENS, J., concurs in result.