UNION STORY TRUST & SAVINGS
BANK, Appellant,

v.

Victor A. SAYER, d/b/a A to Z
Construction Co., and Phyllis
Sayer, Defendants,

James A. Granzow, Bob D. Granzow, and
Paul D. Cooley, Appellees,
Cross-Appellants.

No. 67217.

Supreme Court of Iowa.

March 16, 1983.

Rehearing Denied May 12, 1983.

John L. McKinney, Ames, for appellant.

Lynn J. Wiese, Iowa Falls, for appellees.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, SCHULTZ, and CARTER, JJ.

CARTER, Justice.

Plaintiff and three defendants appeal from judgments entered following jury trial of an action by plaintiff Union Story Trust and Savings Bank (the bank) to recover from defendants James Granzow, Bob Granzow and Paul Cooley (defendants) on a loan guaranty agreement, and a counterclaim by these defendants seeking (a) damages from the bank for claimed breach of its obligation to monitor distribution of construction loan funds, and (b) statutory penalties and attorney fees for alleged breach of the Iowa Consumer Credit Code in obtaining the loan guaranty agreements upon which its claim is based. Other defendants in the trial court are not parties to this appeal, and reference herein to defendants shall include only the three defendants above identified.

Although the case was tried before a jury, the trial court decided all issues as a matter of law. A verdict was directed in favor of the bank on one of the two notes which it claimed had been guaranteed by the three defendants and against the bank on the other note. A verdict was directed against the defendants on their counterclaim for improper monitoring of the construction loan funds, but defendants were awarded attorney fees from the bank based on the trial court's determination that the bank had been guilty of Consumer Credit Code violations on certain transactions involving the guaranty agreement. On appeal, the bank contends it should have been awarded judgment against defendants on both notes instead of only one and that the trial court erred in allowing the defendant to recover attorney fees. The defendants contend on appeal that they should have had summary judgment or directed verdicts on both notes based on Consumer Credit Code violations by the bank and other affirmative defenses, that the trial court erred in excluding certain evidence, and that defendants should have been granted a larger award against the bank for attorney fees. We separately consider the various legal issues which are urged by the parties.

The record discloses that sometime in 1979 the three defendants formed a partnership for the purpose of investing in real estate. Specifically, they were interested in building two four-plex dwelling units in Ames, Iowa, on land they had purchased. Following negotiations, the bid for the project was awarded to Victor Sayer (a defendant in the district court who has not appealed). Sayer's bid called for the construction of two buildings at $83,000 per unit. Under the terms of the original agreement between the partnership and

Sayer, the latter was responsible for obtaining financing for the project. It subsequently became apparent, however, that Sayer would be unable to obtain the necessary loans unless they were personally guaranteed by the three defendants. A discussion concerning financing ensued with the plaintiff bank, and as a result, on November 29, 1978, the three defendants executed a written guaranty agreement which provides in pertinent part:

FOR VALUE RECEIVED and to enable Victor A. Sayer of 408 Marion St., Boone, IA, hereinafter designated as "Debtor," to obtain credit, from time to time, of Union Story Trust & Savings Bank, we hereby request said Bank to extend to said Debtor such credit as said Bank may deem proper, and we hereby jointly and severally guarantee the full and prompt payment to said Bank at maturity, and at all times thereafter, and also at the time hereinafter provided, of any and all indebtedness, liabilities and obligations of every nature and kind of said Debtor to said Bank, and every balance and part thereof, whether now owing or due, or which may hereafter, from time to time, be owing or due, and howsoever heretofore or hereafter created or arising or evidenced, to the extent of

One Hundred Sixty Six Thousand and no/100—Dollars[.]

On December 5, 1978, the plaintiff bank made a construction loan to Sayer in the sum of $166,000 to finance his project with defendants. At the time of trial, the unpaid balance of that loan was $57,000. On June 4, 1979, a second loan was made to Sayer by the bank in the sum of $25,000 for purposes of aiding in this construction project. No payment had been made on this note at the time of trial.

At or about the time of the execution of the loan guaranty agreement by defendants, they discussed with Dan Guertmann, an officer of the bank, their concern that the construction loan funds advanced to Sayer not be diverted from the project. Defendants testified at the trial that Guertmann assured them the bank would monitor the distribution of funds, that Sayer was performing through subcontractors, and that the bank would require lien waivers to correspond with the amount of funds disbursed through Sayer. Sayer later defaulted on the project, and defendants offered evidence at trial, including certain testimony of Guertmann himself, that some funds were distributed to Sayer by the bank from the construction loans involved in this action without first securing lien waivers from the subcontractors. Other facts deemed material to the resolution of this appeal will be discussed in conjunction with our determination of the legal issues presented.

I. *Alleged Consumer Credit Code Violation as a Defense to Guaranty Agreement.*

We first consider the respective arguments of the parties concerning defendants' affirmative defense based on Iowa Code section 537.3208 (1981). That statute, which is part of the Iowa Consumer Credit Code, provides, in part:

No natural person, other than the spouse of the consumer, is obligated as a cosigner, comaker, guarantor, endorser, surety, or similar party with respect to a consumer credit transaction, unless before or contemporaneously with signing any separate agreement of obligation or any writing setting forth the terms of the debtor's agreement, the person receives a separate written notice that contains a completed identification of the debt he may have to pay and reasonably informs him of his obligation with respect to it.

It appears without dispute that none of the defendants received the separate written notice contemplated by the foregoing statute. Defendants assert that this failure precludes the imposition of liability against them under the written guaranty agreement upon which the bank's claims are predicated.

The trial court in directing verdicts both for and against the bank, held that section 537.3208 was not a defense to the bank's claim against defendants for the unpaid

balance of the December 5, 1978 loan to Sayer because that note and the contract of guaranty arose from a single transaction. As to defendants' liability for the second loan to Sayer, made on June 4, 1979, the trial court held that section 537.3208 was applicable and failure of the bank to give defendant a separate written notice of that debt renders the guaranty agreement inoperative as to Sayer's obligations under the second loan.

On appeal, defendants assert that section 537.3208 should be applied so as to preclude their being obligated to repay either loan to Sayer. The bank on the other hand contends that from the inception, the entire guaranty transaction was for purposes of financing a commercial venture, that the two loans to Sayer were both made incident to that purpose, and that as a result no consumer credit transaction is involved.

■ In considering the bank's contention, we note that section 537.3208, by its own terms, is only applicable to a "consumer credit transaction." In the definition portion of the Iowa Consumer Credit Code, section 537.1301(11) provides that the only loan transaction which is a consumer credit transaction is a "consumer loan." An essential element of a "consumer loan" under section 537.1301(14) is that the debt is incurred primarily for "a personal, family or household purpose." It is undisputed in the record that the purpose of both loans to Sayer was to finance a commercial venture for construction of two four-plex dwelling units. Neither loan was, therefore, within the definition of "consumer loan" or "consumer credit transaction."

The defendants do not dispute that the transactions in question were for commercial purposes. Notwithstanding this circumstance, they rely on language in the notes executed by Sayer to support their claim that a consumer credit transaction was involved in both loans. Both the December 5, 1978 note and the June 4, 1979 note executed by Sayer contain the following language: "This loan is subject to the provisions of the Iowa Consumer Credit Code applying to consumer loans." At the bottom of each note in bold-faced type is the statement: "This is a consumer credit transaction." Defendants urge that under our holding in *First Northwestern National Bank v. Crouch,* 287 N.W.2d 151, 153 (Iowa 1980), such language is sufficient to make the remedies of the Consumer Credit Code available in a transaction which otherwise failed to satisfy the definitional requirements of a consumer credit transaction.

■ In *Crouch,* we held that ordinary principles of contract law permit the parties to a loan transaction to contract as to remedies. Such right permits a creditor to extend to a debtor the protections of the Consumer Credit Code even though they would otherwise not apply to the type of transaction involved. The rule, as applied in that case, was utilized to determine the remedies available to the parties to the agreement as between themselves. In the present case, the bank urges that the *Crouch* holding is without application because the contract of guaranty is solely between it and the defendants and was a commercial transaction which in no way adopted the remedies of the Consumer Credit Code. In regard to the facts of the present case, we agree with the bank's contention.

The agreement of guaranty was entered into between the bank and the three defendants on November 29, 1978, prior to the time either note was executed by Sayer. The agreement is by its terms a continuing guaranty as that term is applied in our decision in *Maresh Sheet Metal Works v. N.R.G. Ltd.,* 304 N.W.2d 436, 440–41 (Iowa 1981). It does not relate to specific loan transactions but instead contemplates a course of loans in the future which were to be made in relation to financing a project which might extend for an indefinite period of time. Defendants' obligations under the guaranty agreement are to assure payment by Sayer of sums advanced to him by the bank in the event that Sayer fails to repay these obligations. Within the context of the agreement between defendants and the bank, the terms of the loans to Sayer are not material except as such terms may ulti-

mately result in Sayer owing money to the bank and not repaying it. There is no claim in the present case that Sayer has any defense to repayment based on any provisions of the Consumer Credit Code. We hold that there was no agreement between the bank and the defendants to adopt the remedies of the Consumer Credit Code with respect to the defendants' obligations under the written guaranty agreement of November 29, 1978. Defendants' motion for summary judgment was properly denied.

Because there is no factual dispute as to the extent of Sayer's indebtedness with respect to the transactions involved in the present case, the trial court erred in not directing a verdict in favor of the bank and against the defendants for all of that indebtedness under both the December 5, 1978 note and the June 4, 1979 note. To the extent the judgment entered failed to include all these sums, it is reversed.

### II. *Award of Attorney Fees to Defendants.*

■ Because the trial court found a Consumer Credit Code violation with respect to the action of the bank in seeking to include the indebtedness represented by the second note to Sayer in the sums claimed of defendants under the written guaranty agreement, it awarded certain attorney fees to defendants to be paid by the bank. The award was predicated on Iowa Code section 537.5201(8) (1981) which provides: "In an action in which it is found that a person has violated this chapter, the court shall award to the consumer the costs of the action and to his attorneys their reasonable fees." The amount of this award was ascertained by prorating the time spent by defendants' attorneys between the various claims of the petition. Both sides have appealed from the attorney fee award. Because our holding in the preceding division negates any basis for defendants' claim that there was a violation by the bank of the Consumer Credit Code, we hold that no attorney fees may be recovered by the defendants. That portion of the trial court's judgment is also reversed.

### III. *Exclusion of Copies of Checks Drawn on Sayer's Account.*

■ On defendants' appeal, they contend that the trial court erred in excluding from evidence, as hearsay, microfilmed copies of cancelled checks drawn on Sayer's account at the plaintiff bank, which had been subpoenaed from the records of the bank. The purpose of the proffered evidence was to establish that some of the construction loan funds which are the subject of the present action and which were deposited in Sayer's account at the bank were used for purposes other than the construction project on defendants' real estate.

Defendants urge that the checks are admissible as business records under Iowa Code section 622.28 (1981), which provides:

Any writing or record, whether in the form of an entry in a book, or otherwise, including electronic means and interpretations thereof, offered as memoranda or records of acts, conditions or events to prove the facts stated therein, shall be admissible as evidence if the judge finds that they were made in the regular course of a business at or about the time of the act, condition or event recorded, and that the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness, and if the judge finds that they are not excludable as evidence because of any rule of admissibility of evidence other than the hearsay rule.

Evidence of the absence of a memorandum or record from the memoranda or records of a business of an asserted act, event or condition, shall be admissible as evidence to prove the nonoccurrence of the act or event, or the nonexistence of the condition, if the judge finds that it was in the regular course of that business to make such memoranda of all such acts, events or conditions at the time thereof or within a reasonable time thereafter, and to preserve them.

The term business, as used in this section, includes business, profession, occupation, and calling of every kind.

The foundation laid for admissibility under the foregoing statute was the testimony of the responsible bank officer (1) that in the regular course of its business, the bank routinely makes microfilmed copies of checks drawn on its customers' accounts, the originals of which are returned to the customer, and (2) that the subpoenaed documents were microfilmed copies of checks drawn on Sayer's checking account at the plaintiff bank prior to April 19, 1979.

Initially, we note that these checks were not being offered on any claim of defendants against Sayer on the basis of the admissions exception to the hearsay rule. Nor did Sayer testify at the trial. For purposes of the business record act exception to the hearsay rule embodied by the foregoing statute, the defendants seek to sustain the admissibility of the microfilmed copies as business records of the bank. No claim is made that they are business records of Sayer. We believe that to the extent these microfilmed copies are records of the bank made in the ordinary course of its business, their method of preparation only evidences that upon presentation of these negotiable items, Sayer's account was debited in an amount corresponding to the face amount of the check. The filming by the bank was not the recordation of any information known by the bank concerning (a) Sayer's business purpose in issuing the checks or (b) whether the proceeds were in fact disbursed to the payees named in the instrument. Sayer would be the declarant as to such facts. We believe that if the checks were to be admitted for purposes of proving these facts, this would violate the rule excluding "double hearsay" contained in business records. *See McCormick's Handbook of the Law of Evidence* §§ 310, 313 (2d ed. E. Cleary 1972); Laughlin, *Business Entries and the Like,* 46 Iowa L.Rev. 276, 296–99 (1961). *See also* Fed.R.Evid. 805. Because the microfilmed copies were offered for purposes of establishing either Sayer's business purpose in issuing these checks or that the proceeds were in fact disbursed to the payees named therein, the trial court did not err in excluding the copies as hearsay.

IV. *Directed Verdict Entered on Other Affirmative Defenses of Defendants.*

Finally, we consider the defendants' contention that the trial court erred in directing a verdict on various affirmative defenses alleged by them in addition to their defense based on Iowa Code section 537.-3208 (1981). Each of these additional affirmative defenses is based on defendants' assertion that the plaintiff bank agreed to monitor the construction funds which were to be disbursed by securing mechanic's lien waivers corresponding in amount to each distribution made to Sayer. It is urged that the bank failed to perform this agreement which resulted in certain of the construction funds being applied to the personal obligations of Sayer. Based on these allegations, three legal theories of defense are espoused by defendants. These theories are: (1) promissory estoppel, (2) breach of condition upon which the guaranty was conditioned, and (3) failure of consideration. We separately consider these three legal theories.

█ A. *Promissory Estoppel.* Defendants' promissory estoppel theory, as advanced in their argument on appeal, rests on *Restatement (Second) of Contracts* section 90 (1981). They assert that they were entitled to have the jury consider this defense based on their own testimony of the bank's agreement to monitor the funds, their testimony that they relied on that agreement, and an admission by bank officer Guertmann that some checks had been issued to Sayer without first securing lien waivers.

Even assuming defendants' pleading and proof is sufficient to raise a jury issue as to a claim of promissory estoppel under section 90 of the *Restatement (Second),* we find no basis on which this can serve as a complete defense to the bank's claim against them on the written guaranty agreement. At best, this would give defendants a basis to assert a claim against the bank based on the alleged promise. Such a claim might serve as a pro tanto defense to the bank's claim by

way of set-off, but only to the extent defendants can demonstrate that they have been injured. For reasons presently discussed, there is a complete failure of proof as to any injury to defendants sufficient to support a pro tanto defense to the bank's claims based on a theory of promissory estoppel.

B. *Breach of condition.* Defendants also contend that the bank's failure to monitor disbursement of the construction loan funds constitutes a breach of a condition upon which their obligations under the written guaranty agreement were predicated. In addition to the evidence previously discussed relating to the bank's promise and its failure to perform it, defendants also testified that the agreement by the bank to monitor the loan funds came before they executed a written guaranty agreement and that they would not have given the guaranty in the absence of such promise.

■ Based on this evidence, defendants' claim a jury issue was presented concerning whether they were discharged from performing under the written guaranty agreement based on the alleged breach of condition. As authority for this claim, defendants rely on *Salinger v. General Exchange Insurance Co.,* 217 Iowa 560, 250 N.W. 13 (1933). Our reading of that case suggests that the result arrived at turned on the issue of impossibility of performance rather than breach of condition. We believe in order to predicate the discharge of one of the contracting parties upon breach of condition by the other, the party claiming discharge must show the condition breached constituted the entire agreed exchange by the other party, or was expressly recognized in the bargain as a condition for the other's performance. *See Canfield Lumber Co. v. Kint Lumber Co.,* 148 Iowa 207, 127 N.W. 70 (1910). Otherwise, the nonperformance of the other party is a mere breach of contract for which the remedy is damages. *Mobley v. Boyt Arms Co.,* 256 Iowa 106, 126 N.W.2d 280 (1964); *Mintle v. Sylvester,* 202 Iowa 1128, 211 N.W. 367 (1926).

■ When the foregoing legal principles are applied to the evidence presented at trial, we find no basis for a jury to conclude that the agreement of the bank to monitor the construction loan funds was the entire agreed exchange for defendants' obligation under the guaranty agreement. Nor is there sufficient evidence upon which to predicate a jury finding that in the bargain between the parties, the bank agreed either expressly or by reasonable implication that full performance of its promise to monitor the construction loan funds was a condition to any performance by defendants under the guaranty agreement.

■ C. *Failure of consideration.* In addition to their other affirmative defenses, defendants contend that the bank's failure to completely perform its promise to monitor disbursement of the construction loan funds is such a failure of consideration for the total agreement between the parties as to discharge defendants' duty of performance under the written guaranty agreement. Just as in the case of an alleged breach of condition which the contract itself does not establish to be a condition precedent to performance, an alleged failure of consideration must ordinarily be total in order to be a complete defense to the return performance of the other contracting party. *Mintle,* 202 Iowa at 1135, 211 N.W. at 370. 17 Am.Jur.2d *Contracts* § 398 (1964). There must be some reasonable pairing off of the agreed equivalents in the bargain. *Restatement (Second) of Contracts* § 240 (1981).

■ In the present case, the consideration which is recited in the loan guaranty agreement is that the bank make construction loans to Sayer. This performance has been completed by the bank. In the absence of proof of the extent of the injuries to defendant as a result of the bank's failure to monitor disbursement of funds, we cannot determine that its breach in this regard should constitute a complete defense to its claims against the defendants. It may, however, be a defense pro tanto.

The problem which confronts defendants in showing that there was a jury issue as to even a pro tanto defense of failure of con-

sideration, is the complete failure of proof of any injury sustained by them as a result of the bank's failure to obtain mechanic's lien waivers in all instances. The extent of the defendants' evidence in this regard is Mr. Guertmann's admission that he disbursed $25,000 to Sayer without obtaining lien waivers from subcontractors. But there is no evidence that this resulted in unpaid materialmen or subcontractors filing mechanic's liens on defendants' property or otherwise making claims to defendants' detriment. There was no evidence on which a jury could have found that defendants possessed even a pro tanto defense to the bank's claim based on failure of consideration. The trial court did not err in directing a verdict against the defendants on their affirmative defenses.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.