The FIRST NATIONAL BANK OF CRESTON, Creston, Iowa, Appellant,

v.

CRESTON IMPLEMENT COMPANY, an Iowa Corporation, and Ralph Pilkington, Individually, Appellees.

No. 69245.

Supreme Court of Iowa.

Nov. 23, 1983.

Rehearing Denied Dec. 21, 1983.

David L. Charles of Gamble, Riepe, Burt, Webster & Davis, Des Moines, and Paul J. Boysen, Jr., Creston, for appellant.

William J. Lillis and David Stoller, of Connolly, O'Malley, Lillis & Hansen, Des Moines, for appellees.

Considered by McGIVERIN, P.J., and LARSON, SCHULTZ, CARTER, and WOLLE, JJ.

CARTER, Justice.

Plaintiff, The First National Bank of Creston (hereinafter the bank), appeals from a judgment entered denying its claim against the defendant Pilkington (hereinafter Pilkington), as alleged guarantor of promissory notes executed by defendant Creston Implement Company and from judgment entered against it on Pilkington's counterclaim based on alleged violations of the Iowa Consumer Credit Code.

On appeal, the bank asserts that (1) the trial court erred in concluding that Pilkington's alleged guaranty of certain promissory notes is rendered unenforceable by reason of the bank's failure to give him a written notice of his obligation in accordance with Iowa Code section 537.3208 (1981); and (2) that the trial court erred in giving Pilking-ton judgment on his counterclaim for statutory penalties and attorney fees under the Iowa Consumer Credit Code for the bank's failure to give such notice. We agree with both contentions of the bank, reverse the judgment of the district court, and remand the action for entry of judgment in accordance with this opinion.

Pilkington was the dominant shareholder of a closely held corporation which controlled defendant Creston Implement Company, a farm implement dealership in Creston. In 1978, Pilkington sold the business on contract to two other parties, but reacquired it upon a default on the contract in 1981. Prior to his sale of the business, Pilkington had signed a separate instrument guaranteeing loans from the bank to Creston Implement Company. This guaranty was revoked by letter dated December 27, 1979. That instrument is of no legal significance with respect to the claims in the present action.

Subsequent to the revocation of the 1978 guaranty agreement, Pilkington signed the three notes which are the subject of this action. A note signed in March of 1980 contains Pilkington's signature on a line under which the words "personal guarantee" had been typed. He had also signed the note on behalf of the Creston Implement Company. Two notes dated December 9, 1980, also contain Pilkington's signature in two places, once on behalf of the defendant Creston Implement Company and again on the face of the note with no particular designation indicated. No written notice of the nature of his obligation was given Pilkington as to any of the notes. All three notes carry on their face the phrase: "This is a consumer credit transaction." The notes also carry the printed statement that "this loan is subject to the provisions of the Iowa Consumer Credit Code applying to consumer loans."

The notes were not paid when due, and the bank mailed notices to both Creston Implement Company and Pilkington demanding that the delinquency be cured. The bank filed the present action on the

notes against Creston Implement Company as the maker thereof and against Pilkington as alleged guarantor of the obligations of Creston Implement Company. Pilkington raised the defense that his agreement of guaranty, if any, was rendered unenforceable as a result of the bank's failure to provide the notice required by section 537.-3208. In addition, Pilkington filed a counterclaim alleging that the failure to give such notice was a violation of the Iowa Consumer Credit Code which entitled him to recover statutory penalties and attorney fees from the bank in accordance with Iowa Code section 537.5201 (1981).

The action was tried to the court which entered judgment against Creston Implement Company for the unpaid balance on the three notes, totaling $297,017. The court refused, however, to enter judgment against Pilkington on the ground that the bank's failure to give him the written notice required by section 537.3208 relieved him of any obligation to pay the notes. The court also entered judgment in favor of Pilkington on his counterclaim against the bank for the statutory penalties and attorney fees recoverable under section 537.5201 for violations of the Iowa Consumer Credit Code.

## I. Necessity of Giving a Section 537.3208 Notice.

We first consider the arguments of the parties in relation to Pilkington's affirmative defense based on section 537.3208. That statute, which is part of the Iowa Consumer Credit Code, provides in part:

No natural person, other than the spouse of the consumer, is obligated as a cosigner, comaker, guarantor, endorser, surety, or similar party with respect to a consumer credit transaction, unless before or contemporaneously with signing any separate agreement of obligation or any writing setting forth the terms of the debtor's agreement, the person receives a separate written notice that contains a completed identification of the debt he may have to pay and reasonably informs him of his obligation with respect to it.

No notice of the type contemplated by this statute was given to Pilkington by the bank with respect to the former's obligation on the notes which are the subject of this action. The trial court ruled that this failure relieved Pilkington of any legal obligation to pay the notes.

The bank's primary contention on appeal is that section 537.3208 is not applicable to the three notes in the present case because they represent commercial obligations rather than consumer credit transactions. This contention has two elements, both of which were involved in *Union Story Trust & Savings Bank v. Sayer,* 332 N.W.2d 316 (Iowa 1983). First, the bank urges that by definition the present transactions fall outside the scope of section 537.3208. In addition, it urges that the statute may not be invoked on contractual grounds. In the *Sayer* case, we held that section 537.3208, by its own terms, is only applicable to a consumer credit transaction. We further held that the definition portion of the Iowa Consumer Credit Code provides that the only loan transaction which is a consumer credit transaction is a "consumer loan." An essential element of a "consumer loan" under the definition of section 537.1301(14) is that the debt is incurred primarily for a personal, family or household purpose. Tested by this aspect of the *Sayer* holding, all three notes in the present case represent commercial transactions and are therefore not subject to notice requirements of section 537.-3208.

Our decision in *Sayer* also considered the possible contractual application of section 537.3208. The guarantor in that case contended that under principles similar to those applied in *First Northwestern National Bank v. Crouch,* 287 N.W.2d 151, 153 (Iowa 1980), the provisions of the Iowa Consumer Credit Code had been adopted by agreement of the parties. In support of that contention, the guarantor in *Sayer* relied upon the language in the notes that "this is a consumer credit transaction" and "this loan is subject to the provisions of the Iowa Consumer Credit Code applying to consumer loans."

The liability of the guarantor in *Sayer* was predicated upon a separate guaranty agreement continuing in nature, and relating to unspecified future loans. We held that under such circumstances, the guarantor's liability was the subject of a separate contract not affected by the language on the notes to which the guarantor was not a party. In the present case, Pilkington urges that *Sayer* is inapplicable because his liability, unlike that of the guarantor in the *Sayer* case, flows entirely from his signature on the very instrument which contains the language that "this is a consumer credit transaction" and "this loan is subject to the provisions of the Iowa Consumer Credit Code applying to consumer loans." He asserts that under the rationale of *Crouch,* such language renders the present transactions subject to all applicable provisions of the ICCC relating to consumer loans, including section 537.3208.

The bank urges that the rationale of *Crouch,* 287 N.W.2d at 153, upon which the trial court relied in finding section 537.3208 to be contractually applicable to these commercial transactions, is not germane to the present case. It contends that the rationale of *Crouch* and our later decision in *Citizens First National Bank v. Hoyt,* 297 N.W.2d 329, 331–32 (Iowa 1980) should only be applied with respect to those protections of the ICCC relating to rights and obligations of the parties subsequent to the time the loan agreement becomes binding. It states as a premise for this argument that contractual relationships should be presumed to have meaning; that unless some continuing contractual relationship is created there is no reason for incorporating statutory rights, obligations, or remedies pertaining to such a relationship; and that the incorporation within the agreement of those statutory protections which would render the contractual relationship unenforceable from its inception would be the complete antithesis of a viable contract.

Pilkington argues that if the bank wished to create an enforceable contract of guaranty on which he could be held liable, it need only have given him the statutory notice "before or contemporaneously with" his signing of the notes. He asserts that adoption by the court of the bank's position would be contrary to the underlying purposes and policies of the ICCC and the admonition contained in section 537.1102 that the act be liberally applied. Such argument on his part, we believe, fails to adequately address the contractual basis of the defense upon which he relies.

In *Hart v. Hart,* 160 N.W.2d 438, 444 (Iowa 1968), we stated:

> Bills and notes are generally described as contracts, and fundamental rules governing contract law are applicable to the determination of legal questions arising in connection with such instruments, except as modified by statute.

Any statutory modification which the ICCC makes with respect to the application of fundamental rules of contract law in loan transactions is limited to consumer loans. Consumer loan obligations which are rendered unenforceable by section 537.3208 are made so because the legislature intended that this be done; interpretation of the agreement has no bearing on such result. In the present case, however, where the statutory protection does not apply, the result which Pilkington seeks may be attained only if the contract can be construed as providing such protection.

Our decisions in *Crouch* and *Hoyt* have recognized that the parties to a commercial transaction may incorporate by reference ICCC protections which are not otherwise applicable. In those cases, however, the provisions in issue related to notice of right to cure and debt collection practices, both of which were conditions under which the loan was repayable. Conditions for repayment are part and parcel of all promissory notes and create no basic inconsistency with the parties' purposes in contracting. We believe an entirely different situation is presented where the effect of the conditions claimed to have been incorporated by reference would frustrate the basic purpose which caused the parties to enter into the agreement.

We do not believe the statement in *Crouch*, 287 N.W.2d at 153, that the "intention expressed in the instrument prevails over the secret intention of the drafter" aids Pilkington's claim in the present case. As we have noted, the provisions at issue in the *Crouch* case were facially appropriate to a loan transaction; no contextual inconsistency was suggested. As bearing on this point, we see as relevant the Reporter's Note to Comment *a*, on contract interpretation following *Restatement (Second) of Contracts* section 212 (1979). It states that:

> [T]he proposition that a party's external manifestations must prevail over his private and unexpressed meaning are [expressed in some cases]. Cases making a bald "objective-subjective" distinction often refuse to go further unless an ambiguity is facially apparent.... This approach is deemed simplistic, for the reasons stated in this Comment and Comment *b*.

Comment *a* referred to suggests that the operative meaning of a contract is to be found in the transaction and its context. Comment *b* provides, in part:

> It is sometimes said that extrinsic evidence cannot change the plain meaning of a writing, but meaning can almost never be plain except in a context. Accordingly, the rule stated in Subsection (1) is not limited to cases where it is determined that the language used is ambiguous. Any determination of meaning or ambiguity should only be made in the light of the relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties.

We recognize this principle in *Hamilton v. Wosepka*, 261 Iowa 299, 305–10, 154 N.W.2d 164, 167–69 (1967).

The evidence shows Pilkington to be an experienced businessman. He had been required to guarantee loans by the bank to Creston Implement Company on prior occasions. It was made clear to him in the present transactions that his signature in a personal capacity was a condition to the granting of the loans. He was also the party who was signing on behalf of the primary obligor, Creston Implement Company, and thus is held to know the nature of the obligation which was undertaken. Under basic contract law, such evidence clearly establishes Pilkington's obligation to repay the sums evidenced by the notes unless we give effect to his section 537.3208 defense.

In evaluating that defense in the present case, the issue is not whether Pilkington's knowledge of the transaction constituted substantial compliance with the notice protections which that statute extends to consumer loans; it is whether an experienced businessman entering into a commercial transaction could reasonably have expected that the reference in the note to ICCC provisions would include antecedent conditions which could render the contract unenforceable as to its basic purposes. We think the answer to the latter question is no. It is unreasonable to assume that in contracting for a loan Pilkington and the bank would adopt conditions which would nullify the very agreement upon which enforcement of those conditions was made to depend.

We have said that where a contract is susceptible of two constructions, one of which will accomplish the intention of the parties and make the contract an enforceable one, while the other would make it unenforceable and meaningless, the former is to be preferred. *T.M. Sinclair & Co. v. National Surety Co.*, 132 Iowa 549, 557, 107 N.W. 184, 187 (1906). This is consistent with that which is expressed in *Restatement (Second) of Contracts* section 203 (1979) which provides:

> In the interpretation of a promise or agreement or a term thereof, the following standards of preference are generally applicable:
>
> (a) An interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect;

If the provision in the notes indicating "this loan is subject to the provisions of the Iowa Consumer Credit Code applying to consumer loans" is viewed as relating to the rights and obligations of the parties subsequent to the time the notes become enforceable, all provisions of the agreement may be given reasonable meaning and effect consistent with its underlying purposes. We conclude that this is the meaning of the contracts in the present case. The trial court erred in holding that the language in the notes incorporated the nullifying provisions of section 537.3208.

In determining this issue as a matter of law, we are guided by the standard contained in *Restatement (Second) of Contracts* section 212(2) (1979) which provides:

A question of interpretation of an integrated agreement is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence. Otherwise a question of interpretation of an integrated agreement is to be determined as a question of law.

In *Farm Bureau Mutual Ins. Co. v. Sandbulte,* 302 N.W.2d 104, 107–08 (Iowa 1981) and *Connie's Construction Co. v. Fireman's Fund Inc. Co.,* 227 N.W.2d 207, 210 (Iowa 1975), we applied this standard in determining the meaning of words in a written agreement. We find it equally applicable in determining the meaning of the parties within the context of the transaction. The proper determination of the rights of the parties under the agreements in the present case does not depend upon the credibility of extrinsic evidence nor do we believe we are faced with a choice among reasonable inferences which may be drawn from the transaction and its context. The issue is therefore one of law for the court.

We have also held that the issue of the existence of a legal duty under a contract is a matter of law to be decided by the court. *Roland A. Wilson and Associates v. Forty-O-Four Grand Corp.,* 246 N.W.2d 922, 924 (Iowa 1976). Pilkington's affirmative defense requires us to determine whether the bank had a legal duty to give him a notice of his obligation of the type specified in section 537.3208. For the reasons we have indicated, we hold that it did not.

The extent of Pilkington's liability on the notes may also be determined as a matter of law pursuant to Iowa Code section 554.-3307(2) (1981). His signatures have been established pursuant to Iowa Rule of Civil Procedure 100. The judgment of the trial court denying the bank's recovery on the notes against Pilkington is reversed. On remand, judgment shall be entered in favor of the bank against defendant Pilkington in the same sums and with interest payable at the same rate and from the same dates as provided in the judgment against the defendant Creston Implement Company. The judgment previously entered against the latter defendant is not disturbed on appeal.

II. *Recovery of Statutory Penalties and Attorney Fees for ICCC Violations.*

The bank has also appealed from the judgment entered against it by the trial court assessing statutory penalties and attorney fees pursuant to Iowa Code section 537.5201 (1981) for violations of the ICCC. Because our holding in the preceding division negates the basis for Pilkington's claim that there was a violation by the bank of the ICCC, that judgment must also be reversed. *See Union Story Trust & Savings Bank v. Sayer,* 332 N.W.2d at 320. The judgment of the trial court is reversed and the cause is remanded for entry of judgment consistent with this opinion.

REVERSED AND REMANDED.