EQUILEASE
CORPORATION, Appellant,

v.

Arthur A. SMITH, Appellee.

No. 85–1460.

Supreme Court of Iowa.

May 13, 1987.

Bertrand E. Gionet of Neiman, Neiman, Stone & Spellman, P.C., Des Moines, for appellant.

Phil Watson of Watson & Peterson, P.C., Des Moines, for appellee.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, SCHULTZ, and WOLLE, JJ.

WOLLE, Justice.

We here must construe cross-referenced provisions in Iowa Code chapter 322 (entitled "Motor Vehicle Manufacturers, Distributors and Dealers") and Iowa Code chapter 537 (the Iowa Consumer Credit Code). (All statutory references are to the 1979 edition of the Iowa Code.) The parties disagree on the extent to which those statutes govern a three-party transaction in which Kenworth Mid-Iowa (Kenworth), a Des Moines truck dealer, sold two truck-tractors for more than $100,000; plaintiff Equilease Corporation (Equilease) provided financing; and defendant Arthur Smith

(Smith) obtained use of the vehicles through a lease arrangement with Equilease. When Smith stopped paying scheduled "monthly rentals," Equilease took possession of the vehicles, privately re-leased them to other persons, then brought this action for a deficiency which triggered multiple counterclaims by Smith. The district court in pretrial rulings held that the transaction was a "consumer credit sale" as defined in Iowa Code section 537.1301(13), and Smith obtained a partial summary judgment based on Equilease's failure to give Smith the protection chapter 537 would require. Jury trial of the remaining issues, with a different district judge presiding, resulted in a final judgment denying both Equilease's claim to a deficiency and Smith's unresolved counterclaim. Both parties have appealed. We conclude this transaction was not subject to consumer credit code requirements because the amount financed exceeded $35,000, the maximum amount for a covered transaction. Whether the transaction violated financing restrictions of chapter 322 presents questions of fact which remain to be tried. We reverse and remand on the issues resolved by partial summary judgment; we affirm on the issues submitted to the jury.

## I. *Factual Background for the Parties' Claims.*

In the fall of 1979 Smith was in the business of providing truck-tractors to companies needing or furnishing long distance freight services, and he wished to add to his fleet of trucks. Smith found two truck-tractors for sale at Kenworth, but he was unable to obtain financing from his bank for the purchase price of approximately $110,000. At Kenworth's suggestion, Smith obtained financing from Equilease, a company in the business of "leasing equipment on a nation-wide basis." The papers executed by Smith at Kenworth's office describe a rather convoluted transaction. Title to the vehicles was issued in Smith's name, with Equilease as lien holder, and a purchase confirmation signed by Smith suggested that Smith had purchased the vehicles from Kenworth. The basic document governing Smith's payment for use of the vehicles, however, was an "automotive lease" under which Smith was to make sixty scheduled monthly installment payments, referred to in the document as "monthly rentals."

When Smith subsequently was unable to pay scheduled installment payments, he returned the vehicles to Equilease and they were leased to other persons. Equilease then brought this action at law to obtain a deficiency judgment based on provisions in the automotive lease. Smith counterclaimed and demanded a jury trial of his counterclaims and defenses. He contended that Equilease had improperly "disguised" a retail installment contract as a lease to evade finance charge limitations in Iowa Code section 322.19 and in chapter 537, the Iowa Consumer Credit Code. Smith contended Equilease had violated many other requirements of the consumer credit code allegedly made applicable to this sale by Iowa Code section 322.33(2), and he demanded that Equilease pay damages, penalties, and attorney fees. He also alleged that Equilease had violated the terms of the lease and would be unjustly enriched if allowed to retain the rentals it had received first from Smith and then from re-lease of the vehicles upon disposition of the collateral.

Few of the pleaded issues survived the district court's pretrial rulings which are the focus of the Equilease appeal. The court sustained Smith's motion for separate adjudication of law points (Iowa R.Civ.P. 105), ruling that the parties' transaction as a matter of law was within the reach of both chapter 322 and chapter 537. The court held the limitation on finance charges in section 322.19 was applicable because the lease arrangement was within the definitions of "retail installment transaction" in section 322.2(8) and "retail installment contract" in section 322.2(9). The court then held that the more restrictive provisions of the consumer credit code also applied to the parties' transaction, construing section 322.33(2) to extend the definition of "consumer credit sale" to reach any and all sales "for a business purpose."

Relying on these rulings, Smith obtained partial summary judgment against Equilease for $12,185.34 in finance charges, a $1,000 penalty, and $1,870.60 in attorney fees.

At a pretrial conference the parties then agreed that only three issues remained for jury trial: whether Equilease had a right to repossess the trucks from Smith; whether Equilease had disposed of the trucks in a commercially reasonable manner, as required by Iowa Code chapter 554, the Iowa Uniform Commercial Code; and whether Smith was entitled to the return of funds he paid Equilease while using the vehicles. The jury returning special verdicts found Equilease had disposed of the vehicles in a commercially reasonable manner but had not given Smith reasonable notification of the time after which it would dispose of the repossessed trucks at a private sale. Based on the latter finding the trial court entered judgment against Equilease on its action for a deficiency judgment. The trial court then concluded that Equilease had not obtained an overage from re-leasing the vehicles and entered judgment against Smith on its counterclaim for the alleged overage.

The gist of the Equilease appeal is the district court's pretrial determinations that both chapters 322 and 537 applied to this transaction. Smith cross-appeals from the trial court's refusal of his proposed jury instruction concerning calculation of the proceeds of disposition of the collateral.

II. *Statutes Pertinent to the Equilease Appeal.*

■ Our first task is to harmonize the several provisions of Iowa Code chapters 322 and 537 that refer to each other and appear to work in concert in regulating installment financing of motor vehicles. We search for the true intention of the legislature, first relying on clear and plain language that does not produce a strained or absurd result. *Iowa Nat'l Indus. Loan Co. v. Iowa State Dep't of Revenue,* 224 N.W.2d 437, 439–40 (Iowa 1974). In construing and attempting to harmonize these two statutes we do not attribute undue importance to any single or isolated portion of either statute, but consider all portions together and attempt to give effect to all. *Kohrt v. Yetter,* 344 N.W.2d 245, 246 (Iowa 1984); Iowa Code § 4.7.

The provisions within chapter 322 relating to retail installment financing of motor vehicles were first enacted in 1957. *See* 1957 Iowa Acts ch. 163. *See generally* Note, *The Retail Installment Financing of Motor Vehicles—a Survey of Recent Iowa Legislation,* 7 Drake L.Rev. 65 (1957). Section 322.19 provides specific limits on the finance charges that may be included in retail installment transactions involving motor vehicles, depending upon the amount financed. Section 322.19 borrows the definition of "amount financed" from Iowa Code section 537.1301.

The Iowa Consumer Credit Code, patterned on the Uniform Consumer Credit Code, was enacted in 1974. 1974 Iowa Acts ch. 1250. Its general purposes, broadly to protect consumers in relatively small credit transactions, are explained in Iowa Code section 537.1102. *See* Iowa Code § 537.1301(13)(a)(2), (5) (debtor is person, not organization; debt does not exceed thirty-five thousand dollars); *Union Trust & Sav. Bank v. Sayer,* 332 N.W.2d 316, 319–20 (Iowa 1983) (loans to contractor to finance commercial venture not within ambit of consumer credit code).

A. Applicability of chapter 537. While section 322.19 regulates only the finance charges that may be included in certain motor vehicle transactions, chapter 537 provides a host of restrictions on transactions within its reach, including restrictions on finance charges and certain discouraged trade practices, requirements for disclosure of information, and broad civil remedies to assure compliance.

Without question chapter 537, construed without reference to chapter 322, had no application to the Smith-Equilease transaction because to meet the requirement that it be a "consumer credit sale" the amount financed could not exceed $35,000. Iowa Code § 537.1301(13)(a)(5). Smith, however, obtained a full panoply of consumer credit code protections by persuading the district court that two specific cross-referenced

provisions—section 322.33(2) and section 537.2201(1)—brought this motor vehicle transaction back within chapter 537 notwithstanding the $35,000 limit.

Section 322.33 provided:

1. The provisions of the Iowa consumer credit code shall apply to a consumer credit sale in which a licensed motor vehicle dealer participates or engages, and any violation of that code shall be a violation of this chapter.

2. Article 2, parts 5 and 6, and article 3, sections 537.3203, 537.3206, 537.3209, 537.3304, 537.3305, and 537.3306 shall apply to any credit transaction as defined in section 537.1301, that is a retail installment transaction. For the purpose of applying provisions of the consumer credit code in those transactions, "consumer credit sale" shall include a sale for a business purpose.

3. A provision of the Iowa consumer credit code shall supersede a conflicting provision of this chapter.

Subsection 322.33(1) was inapplicable to this transaction because the sale exceeded the $35,000 amount-financed limit for a "consumer credit sale." The district court, however, focusing on the last sentence of section 322.33(2), found that this transaction was "a sale for a business purpose" and read that phrase to bring within the definition of "consumer credit sale" in section 537.1301(13) all business-purpose sales notwithstanding that definition's explicit $35,000 exclusion. We set out in full the key definition of "consumer credit sale" in section 537.1301(13)(a) so its relationship to section 322.33(2) can be understood:

a. Except as provided in paragraph "b", a consumer credit sale is a sale of goods, services, or an interest in land in which all of the following are applicable:

(1) Credit is granted either pursuant to a seller credit card or by a seller who regularly engages as a seller in credit transactions of the same kind.

(2) The buyer is a person other than an organization.

(3) The goods, services or interest in land are purchased primarily for a personal, family, household or agricultural purpose.

(4) Either the debt is payable in installments or a finance charge is made.

(5) With respect to a sale of goods or services, the amount financed does not exceed thirty-five thousand dollars.

When sections 322.33(2) and 537.1301(13)(a) are placed side by side, it is clear that the legislature intended the "business purpose" phrase to modify only subsection 537.1301(13)(a)(3) which alone among the five subsections refers to purposes of the purchase of goods. While the last sentence of section 322.33(2) does expand the "purpose" subsection to include sales of motor vehicles for business purposes, it has no greater reach and does not expand coverage to transactions involving more than $35,000.

This construction of these sections in separate chapters of the Code squares with the public policy of chapter 537 which generally is designed to protect consumers in relatively small transactions and not persons financing purchases so large as to exceed $35,000. This interpretation best reflects the legislative intent. *Elliott v. Iowa Dep't of Pub. Safety*, 374 N.W.2d 670, 672 (Iowa 1985).

Smith argues that in harmonizing chapters 322 and 537, we should also consider a second bridge between the two statutes, section 537.2201(1) which provides in pertinent part:

With respect to a consumer credit sale of a motor vehicle, a creditor may contract for and receive a finance charge as provided in section 322.19, and a finance charge in excess of that provided in section 322.19, is an excess charge in violation of this chapter.

The language of this section is entirely consistent, however, with what we conclude was the modest extension of consumer credit protection from that provided by section 322.19 to motor vehicle transactions involving $35,000 or less. For the motor vehicle transaction to be covered, however, it still must be a consumer credit sale as defined in section 537.1301(13), and when the amount financed exceeds $35,000 it

does not qualify for consumer credit code protection.

We conclude that this transaction involving an amount financed well in excess of $35,000 was not covered by the consumer credit code. The partial summary judgment for Smith must therefore be reversed.

■ B. Applicability of chapter 322. Equilease also appeals the district court's pretrial ruling, pursuant to Iowa Rule of Civil Procedure 105, that as a matter of law its automotive lease with Smith constituted a retail installment transaction and retail installment contract subjecting it to the finance charge limitations of section 322.19. Equilease argues the sale of the truck-tractors was not "at retail," as that phrase is defined in section 322.2(4) because the vehicles were not sold to "a person who will devote [them] to a consumer use." Equilease contends it was a "sales finance company" (Iowa Code § 322.2(12)) and not a "retail seller." Iowa Code § 322.2(10).

This record does not provide us an adequate factual basis for answering those questions and we therefore remand the issues arising under chapter 322 for further proceedings in the district court. When the district court rendered partial summary judgment based on application of the consumer credit code, Smith no longer had an incentive to pursue his section 322.19 counterclaim. With our reversal of that partial summary judgment, Smith should in fairness be given the opportunity to proceed with his claim for excessive finance charges based solely on section 322.19.

A pretrial determination of legal questions pursuant to rule 105 may be useful and quite proper when no material facts are in dispute or when a legal issue is "independent of a disputed factual issue and a ruling favorable to the applying party will necessarily be dispositive of the case in whole or in part." *State ex rel. Miller v. Hydro Mag, Ltd.*, 379 N.W.2d 911, 913 (Iowa 1986); *accord Iowa Elec. Light & Power v. Wendling Quarries*, 389 N.W.2d 847, 848 (Iowa 1986). Neither of those circumstances was present here. Equilease vigorously disputed Smith's characterization of the automotive lease as a dis-

guised retail installment contract, and the writings documenting the transaction did not unequivocally disclose the parties' intentions. The district court should not have ruled on whether the transaction was subject to section 322.19 without giving the parties the opportunity to present evidence bearing on that issue which was here a mixed question of fact and law. We therefore do not reach and decide the effect of chapter 322 on the Smith-Equilease transaction. *See Montz v. Hill-Mont Land Co.*, 329 N.W.2d 657, 658 (Iowa 1983).

### III. *The Judgment Based on Special Jury Verdicts.*

Both Equilease by appeal and Smith by cross-appeal challenge the judgment entered upon the jury's special verdicts.

A. The Equilease appeal. Equilease contends that it did not receive a fair jury trial on its claim for a deficiency because in pretrial proceedings the district court transformed its "automotive lease" into a retail installment contract and consumer credit sale. Equilease overlooks, however, its pretrial conference agreement concerning the issues to be submitted to the jury. The trial court submitted the issues based on that agreement and Equilease did not object to the instructions which were grounded in the Iowa Uniform Commercial Code. The trial court correctly based its judgment for Smith on the jury's special verdict finding that he was not given adequate notice of disposition of collateral. The judgment was properly entered on that basis. *See Northwest Bank & Trust Co. v. Gutshall*, 274 N.W.2d 713, 717–19 (Iowa 1979), *overruled on other grounds, IPAL-CO Employees Credit Union v. Culver*, 309 N.W.2d 484, 487 (Iowa 1981); *Beneficial Fin. Co. v. Reed*, 212 N.W.2d 454, 457–59 (Iowa 1973). Equilease has not demonstrated that it did not receive a fair trial on the issues presented to the jury.

■ B. The Smith Cross-Appeal. Smith's only assignment of error concerns the trial court's rejection of his proposed jury instruction on damages. The proposed instruction, drawn loosely from Iowa Code section 554.9504, summarized Smith's

claims to an overage based on gross rental payments received by Equilease when it re-leased the truck-tractors. The proposed instruction recited as established fact Smith's version of the evidence concerning the amounts Equilease had received from Smith and the subsequent lessees of the vehicles, the amount Smith claimed he owed on the automotive lease, and concluded:

> Therefore, you are instructed that [Smith] is entitled to the sum of $9359 less the amount, if any, that you find to be reasonable expenses incurred by [Equilease] in the retaking and sale of the vehicles.

Submitted to the jury, the instruction would have been the functional equivalent of a directed verdict for Smith on several damage issues.

The trial court did not err in rejecting the proposed instruction. While the instruction may have been consistent with Smith's view of the evidence, the evidence was in conflict and certainly not so strong as to fix as a matter of law any amounts of damages claimed. Moreover, the total disposition proceeds to which the instruction referred was not accurate, because the release of the two vehicles had included lease of a semi-trailer in which Smith never had an ownership interest.

A trial court may draft its own jury instructions in its own way if they fairly cover the issues. *Bossuyt v. Osage Farmers Nat'l Bank,* 360 N.W.2d 769, 774 (Iowa 1985). Smith does not here contend that the jury instructions were otherwise flawed. Because the trial court did not err in rejecting the proposed instruction on damages, we affirm on the cross-appeal.

IV. *Disposition.*

On the Equilease appeal we reverse the partial summary judgment entered in favor of Smith on his counterclaim and remand for further proceedings consistent with our holding that Iowa Code chapter 557 had no application to this transaction. Smith shall be given the opportunity to develop and proceed on his counterclaim theories that are not dependent on treatment of the transaction as a consumer credit sale and that were not submitted to the jury.

On the Smith cross-appeal we affirm. The parties have not demonstrated that the judgment entered on the jury's special verdicts was affected with error. Costs on appeal are taxed to defendant Smith.

REVERSED AND REMANDED ON APPELLANT'S APPEAL; AFFIRMED ON CROSS–APPEAL.