George **WEST**, Appellee,

v.

Steven C. **JAYNE**, Appellant.

No. 90–1859.

Supreme Court of Iowa.

April 15, 1992.

 

Carlton G. Salmons of Austin, Gaudineer, Austin, Salmons & Swanson, Des Moines, for appellant.

Toby Swanson of Toby Swanson, P.C., Des Moines, and Emil Trott, Jr., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and SCHULTZ, CARTER, LAVORATO, and ANDREASEN, JJ.

SCHULTZ, Justice

A suspended lawyer, George West, brings a breach of contract suit against a former associate lawyer, Steven C. Jayne, seeking damages for a percentage of fees collected by Jayne and for punitive dam-

ages. The trial court awarded West a judgment for most of the fees he sought but refused to award him punitive damages. Jayne appeals and challenges the trial court's award of damages. West cross-appeals claiming he is entitled to more actual damages plus punitive damages. We affirm as modified.

West obtained a law degree and his license to practice law in 1955. In 1957, he entered the private practice of law. West's law practice included personal injury litigation and workers' compensation.

Jayne graduated from law school in 1978 and obtained his license to practice law in June 1979. On July 1, 1979, he was hired by West as his associate. The oral agreement between West and Jayne was that Jayne agreed to provide legal services to West and West agreed to:

a. Provide Jayne with secretarial assistance, office space, utilities, equipment, supplies, and such other support necessary to engage in the practice of law.

b. Pay Jayne a weekly sum of money ... which on July 3, 1985 was $350 a week.

c. Pay Jayne one-third of any fee collected by Jayne pursuant to a contingent fee agreement in the processing of any claim referred by West to Jayne.

d. Pay Jayne two-thirds of any fee collected by Jayne pursuant to a contingent fee in the processing of any claim where Jayne was the referral source.

e. Pay Jayne one-third of any fee collected by West in the processing of any claim referred by Jayne to West.

In 1979, Jayne had no clientele of his own and relied upon clients provided by West. In 1982, Jayne's total compensation exceeded $55,000; in 1983, it exceeded $53,000; and in 1984, it exceeded $61,000. During these years, the vast majority of Jayne's income came from his salary and referrals from West. In 1984, by agreement of both parties and in anticipation of an expanded case load, a third lawyer was brought into the firm as an employee of West and was given a salary of $500 per week. This employee started doing the majority of per hour, or noncontingency fee work previously performed by Jayne.

In 1984, a complaint was filed with the Committee on Professional Ethics and Conduct of the Iowa State Bar Association against George West. As a result, on May 21, 1986, this court suspended West's license to practice law for one year. *Committee on Professional Ethics v. West*, 387 N.W.2d 338 (Iowa 1986). West's license has never been reinstated. The incidents that led to West's suspension were not related to the contingent fee cases in dispute in this case.

Meanwhile, on July 3, 1985, West paid Jayne the last $350 weekly salary under their oral contract. The parties disagree on the reason Jayne's weekly salary was discontinued. West claims that Jayne's refusal to work on some real estate matters justified the discontinuance of Jayne's weekly salary. West further maintains that he had discussed the discontinuance of Jayne's salary with Jayne several times prior to July 3. In contrast, Jayne claims that West told him for the first time on July 3 that West was having cash flow problems and could no longer afford to pay Jayne's weekly salary. Jayne also denies his refusal to work on the real estate matters.

Jayne continued to work in the office with West until October 1985. Jayne did not share with West the $22,500 in fees that he recovered between July 3, 1985, the date Jayne alleges West breached the contract, and October 31, 1985, the date Jayne moved out of the office. Jayne moved out of the office without giving notice to West and took the files of over sixty cases which were pending. These cases were primarily contingent fee cases for which Jayne obtained written authorization from the clients for his continued representation. In these cases, Jayne later recovered fees in the amount of $283,321. Jayne neither paid West any portions of the recovered fees nor any of the recovered costs that West advanced to clients.

West and Jayne both accused the other of breach of contract and claimed damages. The trial court concluded that if West

breached the contract, Jayne waived the breach. It found that Jayne had breached the contract by failing to pay West sums to which he was entitled. The court further found that Jayne collected fees in the amount of $305,822 under the contract. After adjustments for amounts West owed Jayne, the court held that West was entitled to recover $126,453.98 from Jayne.

On appeal, Jayne claims the trial court erred (1) in its determination of the issue of West's breach; (2) in awarding damages largely earned after West's suspension; and (3) in finding Jayne's conduct was not legally excused. On cross-appeal, West claims the trial court erred in failing to allow West's recovery on one case and to include costs West advanced to clients. He also contends the trial court erred by dismissing his claim for punitive damages.

I. *West's breach of contract.* On appeal, Jayne urges that the trial court erred on the issue of whether West breached the contract by discontinuing the weekly payments to Jayne. Jayne urges that the court erred (1) in failing to decide the issue of breach; (2) in deciding the issue of waiver which was not raised; and (3) in awarding West damages after West breached the contract. We address these issues in turn.

The trial court did not specifically rule in its opinion or in response to a posttrial motion whether or not West breached the parties' contract. Jayne's position is that West could not sue for breach of a contract which he repudiated first by a prior breach. Stated otherwise, Jayne maintains that because West terminated Jayne's weekly salary, West cannot collect his contractual percentage of the recoveries in the contingent fees cases, including those cases in which the work was almost completed on July 3, 1985. We do not agree with Jayne's contention.

■ Assuming without deciding that West did breach the contract by refusing to pay Jayne's weekly salary, West's failure to pay did not permit Jayne to annul the contract and retain all of the benefits for performance already completed by West. At most, West's failure to pay is a partial breach which does not deprive West of his contractual rights. 6 Arthur L. Corbin, *Corbin on Contracts* § 1253 (1962). In *Pirkl v. Northwestern Mut. Ins. Ass'n,* 348 N.W.2d 633, 636–37 (Iowa 1984), we stated:

> The fact that a certain performance is required on the part of one of the contracting parties does not necessarily render it a condition precedent to the enforcement of any performance on the part of the other party to the agreement. *Union Story Trust & Sav. Bank v. Sayer,* 332 N.W.2d 316, 322 (Iowa 1983). In the *Sayer* case, we said:
>
>> [I]n order to predicate the discharge of one of the contracting parties upon breach of condition by the other, the party claiming discharge must show the condition breached constituted the entire agreed exchange by the other party, or was expressly recognized in the bargain as a condition for the other's performance.
>
> *Id.*

In this case, the record reveals that Jayne's weekly salary comprised a minor portion of Jayne's compensation. Jayne's weekly salary was not a condition that constituted the entire agreed upon exchange by the parties, nor did it go to the whole of the contract.

■ A breach of an agreement by a business associate, whether or not committed in bad faith, ordinarily does not cause an associate to lose the right to share in the profits. *See Engel v. Vernon,* 215 N.W.2d 506, 515 (Iowa 1974). West produced many clients who were referred to Jayne. Furthermore, West invested significantly in Jayne's work by paying all of the overhead expenses. For the foregoing reasons, we must reject Jayne's contention that West's failure to pay him a weekly salary deprives West of any rights under the contract.

Our determination that West can collect his contractual share of the contingent fee cases does not deprive Jayne of a remedy. Jayne could have attempted to enforce his weekly salary payment or attempted to seek damages for the unpaid salary. Our review of Jayne's appellate brief, trial brief, and posttrial motions indicates that Jayne did not seek damages for West's

termination of his weekly salary. Jayne's consistent position was to seek nullification of any obligation on his part to pay West the appropriate percentages of the contingent fees. Consequently, Jayne was not prejudiced by the trial court's failure to rule on whether or not West breached the contract. Likewise, he was not prejudiced by the trial court deciding the issue of waiver. Even if we assume that West breached the contract first, we find no error in the trial court's award of damages.

II. *Effect of West's suspension.* On appeal, Jayne claims that the trial court improperly awarded West damages. The thrust of Jayne's contention is that West is prohibited from earning fees or deriving any income from the practice of law after his May 26, 1986, suspension. He further argues that West's suspension annuls any legal obligation between them for the amount West claims Jayne owes him. Jayne argues that if West is entitled to any damages, he should have "no more than his hourly rate for seven hours spent on cases producing a fee before his suspension … and maybe his 18 hours on all cases which produced a fee after his suspension…." In considering Jayne's contentions, it is important to note that the dispute in this case is between two lawyers concerning a claim of breach of their contract. It is not a claim by a suspended lawyer against a client for fees.

As an initial matter, West contends that Jayne did not preserve error on some of the issues that are raised on appeal. We believe error was preserved and will address the merits of Jayne's claims.

Jayne claims that Supreme Court Rule 118.12 was undermined by the trial court's award of damages. Rule 118.12 requires an attorney under suspension to refrain from all facets of an ordinary law practice. Jayne also cites two formal Advisory Opinions which address a suspended lawyer's entitlement to earn fees. Jayne contends these two advisory opinions entitle a suspended lawyer to fees in contingent fee cases only "in proportion to the services performed and the responsibility assumed prior to the suspension or the disbarment,"

Iowa State Bar Association Committee on Professional Ethics and Conduct, Formal Op. 87.15 (February 12, 1986), or "at his regular hourly rate at the time he rendered services in the case for the time he expended on the case," Iowa State Bar Association Committee on Professional Ethics and Conduct, Formal Op. 85.15 (May 23, 1986).

▪ We emphasize that these two advisory opinions do not address the situation of two lawyers who were associates in the same firm prior to a suspension of one lawyer. It is a common practice for attorneys who work together as associates to afford the attorney who secures business, or clients, a percentage of the eventual fee, regardless of whether that attorney performed the legal services or whether other members of the association completed the work. Except for possibly overseeing the work, the attorney securing the client completes his portion of the work and is entitled to a percentage of the eventual fee at the time he turns the client's work over to another member of the association. On the cases that came to West, he completed his work and was entitled to one-third of the eventual fee when he turned the cases over to Jayne. The other one-third of the fee due West was for office overhead. Consequently, we do not believe that West collected fees for work done after he was suspended. We limit this ruling, however, to cases involving the division of contingent fees between lawyers who worked together as associates.

Our conclusion is supported by *Sympson v. Rogers*, 406 S.W.2d 26 (Mo.1966), which is the case the trial court relied upon. In *Sympson*, the assignee of a disbarred lawyer sued for compensation due the disbarred lawyer under an oral contract entered between the disbarred lawyer and two successor lawyers before disbarment. The two successor lawyers agreed to assume the legal work on five of the disbarred lawyer's contingent fee cases and pay the disbarred lawyer a percentage of the fees recovered. *Id.* at 27. The Missouri court held that the disbarred attorney could enforce the oral contract. *Id.* at 32. The court explained that its decision was

strictly based on the contract between the disbarred attorney and the successor attorneys, and emphasized the case presented was neither a suit in quantum meruit nor a suit by a disbarred attorney against a former client. *Id.* at 29. It further emphasized that the oral contract provided that the disbarred attorney was deemed to have already earned his portion of any fees subsequently recovered by the successor attorneys. *Id.* at 27. The Missouri court also concluded that allowing the disbarred attorney to recover on the contract did not violate the rule against splitting fees with a layperson because the contract was entered while the disbarred attorney was still licensed to practice law. *Id.* at 32. We agree with these conclusions.

We do not believe that West's suspension annuls the contract with Jayne. We believe that West had performed his services under the contract at the time he turned the cases over to Jayne. We also reject Jayne's contention that the parties' contract was annulled prior to West's suspension by acts of West and Jayne, or by operation of law. Thus, Jayne's contention that West can recover only on the reasonable value of his services performed, or on a quantum meruit basis, has no merit.

III. *Legal excuse.* Jayne contends that the trial court erred by not finding him legally excused or immune from breach-of-contract liability. He argues he acted in conformance with the law by complying with this court's rules and the Committee's formal opinions and by obtaining the legal advice of an attorney before leaving his association with West to protect his own financial survival. Jayne argues that the trial court was penalizing him for "his taking the files in disregard of any contract rights of West." He also states that "West and [the] trial court believed that [he] had 'stolen' West's clients' cases." This is an overstatement. The trial court actually stated:

> If it is logical to argue that to allow West to recover any fees would reward him for his unethical behavior, it is just as logical to argue that denying West any fees would reward Jayne for his taking the files in disregard of any contract rights of West.

The trial court's statements are more reasons than conclusions. Penalizing or excusing either West or Jayne does not seem to be a primary theme of the trial court's ruling. Rather, the trial court's ruling seems to focus upon achieving an equitable enforcement of the parties' association agreement and awarding the amount to which each party was entitled.

■ IV. *Central Transit Warehouse Co. case.* West claims that he is entitled to a percentage of any fees that Jayne receives from the Central Transit Warehouse Company (Central) case, which originated in his office in early 1984. West had previously performed legal services for Central before it went into bankruptcy. West was hired by the bankruptcy trustee to prosecute a claim against an insurance company on a contingency fee basis. West referred the case to Jayne who worked on it until he left the office. Jayne left the file with West and notified the trustee that he would have to withdraw as counsel on the case. Later, the trustee discharged West partially because of the Committee's investigation of West. Thereafter, the trustee entered into a new fee contract with Jayne to prosecute the case.

West claims that Jayne would not have had an opportunity to work on the case if West had not obtained the business initially and referred it to Jayne while he was still in the office. West maintains that he should be entitled to one-third of any fees eventually recovered in this case or, at the very least, be compensated for his time spent on the case prior to his suspension. The trial court found that he was not entitled to share in the fees.

We agree with the trial court's findings and conclusions. The trustee discharged West as attorney for the Central case. Although Jayne worked on the Central case while still in association with West, he obtained the trustee as a client by his own efforts, not from West. Thus, we conclude that West's claim to fees in the Central case does not fall within the contract at issue in this case.

V. *Costs advanced by West and recovered by Jayne.* Before trial, the parties stipulated that $4,897.43 advanced by West had been recovered as part of Jayne's recoveries in the disputed cases. Jayne's answer to West's petition acknowledged that Jayne was willing to repay any costs advanced by West which were identified during the suit. Furthermore, Jayne testified that West was entitled to the stipulated amount advanced by West. In its finding of facts, the trial court accepted this testimony and the parties' stipulation to the amount of $4,897.43, but omitted this amount from West's damage award. Jayne concedes the court's error, but contends that West did not preserve error by filing a rule 179(b) motion asking the trial court to include the $4,897.43 in West's damage award.

Iowa Rule of Civil Procedure 179(b) provides as follows:

> On motion joined with or filed within the time allowed for a motion for new trial, the findings and conclusions may be enlarged or amended and the judgment or decree modified accordingly or a different judgment or decree substituted....

We interpret this rule to allow the judgment or decree to be modified or substituted in those cases in which the findings and conclusions are enlarged or amended. In this case, the findings of fact need not be enlarged because the trial court's findings of fact acknowledged the amount of costs advanced by West which were recovered by Jayne. The trial court did not make a mistake or omission in its findings of fact; it simply failed to correctly compute the amount of the judgment. We must modify and increase the total judgment by the amount of $4,897.43.

VI. *Punitive damages.* West contends that the trial court erred in dismissing the punitive damages count of his petition prior to trial. West pled that Jayne's removal of files from West's office and his collection and retention of fees and expenses belonging to West constituted willful and wanton disregard of West's contractual rights.

The trial court was correct in dismissing Count III of West's petition. In Iowa, punitive damages are not ordinarily recoverable for breach of contract. An award of punitive damages may be awarded in a breach of contract case if a defendant is guilty of malice, fraud, or other illegal acts. *Woods v. Schmitt*, 439 N.W.2d 855, 870 (Iowa 1989); *Higgins v. Blue Cross*, 319 N.W.2d 232, 235 (Iowa 1982). In this case, we do not find substantial evidence of this type of conduct. Jayne's acts amounted to an intentional breach of contract; however, such conduct will not form the basis for recovery of punitive damages. *Berryhill v. Hatt*, 428 N.W.2d 647, 656 (Iowa 1988).

VII. *Summary.* For the reasons outlined, we modify the trial court's award of damages and remand to the trial court to increase West's award by the sum of $4,897.43. In all other respects, we affirm the trial court.

AFFIRMED AS MODIFIED.